Mr Justice Story
 

 delivered the opinion of the Court.
 

 This is a writ, of error to -the circuit court of the district of Kentucky^, to revise a judgment of that court, in a case where (he plaintiffs in error were original plaintiffs in the suit.
 

 The suit was an action, of debt brought upon a promissory note, dated the 7th of February 1822, whereby the defendants, ou or before the 7th of February 1826, jointly and severally promised to pay the President, &c. of the, Bank of the United States, at their office of discount and deposit, at Lexington, 5000 dollars with interest thereon, after the rate of six per cent per annum, until paid, for value received. And by a memorandum on the back of the note, the interest was to be charged only from the'21st of May 1822 ; that'being the day on which the money was actually received by the makers of the note.
 

 The plea of payment was put in, upon which issue ,was joined; and.it was agreed between the parties, that either party under the issue might give in evidence any special matter which could be specially pleaded. At the trial a verdict was rendered for the defendants, upon which, judgment passed in their favour ; and the. cause is now brought before us for revision, upon a bill of exceptions taken at the trial, and for matters of law therein stated,
 

 
 *394
 
 From the evidence at the trial,-it appears that prior to the time when the note was given, vi¿. in 1819, the bank of Kentucky, which had previously beéa in high credit, suspended specie payments; and at that- time the institution was indebted to the plaintiffs, the Bank of the United States, in a large sum of money, for notes of. the Bank of Kentftcky, taken at par, in ■ tlie usual course of business, and for government deposits transferred to the office' at Lexington, from the Bank of Kentucky and its branches. The accounts had been settled between the (wo instifutions, the balance ascertained and placed to the credit,of the plaintiffs, on the books of the Bank of Kentucky as a deposit; upon which the Bank of Kentucky agreed, in consideration of forbearance, to pay interest at the rate of six per cent per annum; and the interest, as it accrued, was carried, at stated intervals, to the credit of the plaintiffs, on the books of the bank. This agreement was punctitally performed by the Bank of Kentucky, and the balance which remained-due t.o the plaintiffs was finally settled and discharged in specie, or its equivalent; in- about seven months after the negotiation, which will be immediately noticed.
 

 In this state of thing's, Owens, one of the defendants, made repeated applications to the Lexington office of the Bank of the United States, for an accommodation of 5000 dollars, in Kentucky Bank notes; of which the' office had a considerable sum on hand ; stating that such notes would answer his purpose as well as gold or silver, and agreeing to receive them at their nominal amounts. These applications were rejected; and finally, at his urgent suggestions, an application was made to the parent bank at Philadelphia, to permit the Lexington office to grant the application; and-the parent bank accordingly gave the permission. The note, now in suit was accordingly given, with a mortgage of real estate as collateral security.; and .1100 dollars were received in Kentucky Bank notes, and the remaining 3900 dollars were .paid by a check drawn on the Bank, of Kentucky, which was duly honoured ; and the amount of the pheck was deducted from the balance due to the plaintiffs,'and interest thereon immediately .ceased.
 

 It further appeared, at the trial, that the-Bank of Kentucky was never insolvent, but had'always sufficient effects to pay its' debts; that if has been several times sued for its debts, which
 
 *395
 
 had been always paid in specie, or other arrangements had . been made satisfactory to the creditors; it had discharged the greater part of its debts, and had distributed among its stockholders 10 dollars in specie and 70 dollars in notes of the Commonwealth Bank of Kentucky, (which were at a great depreciation), and that all its funds had not yet been distributed.
 

 The Bank of Kentucky never resumed specie payments, and at the time of the negotiation above stated, the notes were depreciated from thirty-three to forty per cent, and.were current as a circulating medium at this rate of depreciation. They were, however, by law, receivable for. state taxes and county levies at par, and had accordingly been so received.
 

 Upon this evidence the plaintiffs moved the court to instruct the jury as follows.
 

 ■ “ 1. That, if they believe from the evidence, that the consideration of the note sued on was 3900 dollars paid in check . on the Bank of Kentucky, and 1100 in Kentucky Banknotes ; and that the contract was fairly made, without any intention to .evade the laws against usury, but that the parties making the • contract intended to exchange credits for the. accommodation of Owens; that the Bank of Kentucky was solvent, and so understood to be, and able to pay all its debts by coercion': that the contract is not void:for usury, nor contrary to the fundamental law or charter of the bank, notwithstanding it was known to the parties that said bank did not pay specie for its notes without coercion; and that the difference in exchange between bank notes .of the Bank of Kentucky, and gold and silver, was from thirty-three to forty per cent against the notes of the Bank of Kentucky.
 

 “ 2.
 
 To instruct the jury that, if they believe from the evidence that the contract was made on the part of the bank fairly, and with ho intention to avoid the prohibition of their charter, by taking a greater rate of interest than six per cent, or the statutes against usury, but at the instancé, and for the accommodation and benefit of tbe defendant Owens; and that at the time of the negotiation and contract for the check on the bank, and the 1500 dollars in bank notes of the Bank of Kentucky, the Bank of Kentucky was indebted to the Bank of the United States, at their office aforesaid, the sum of 10,000 dollars or more, bearing an interest of six per cent; which sum,
 
 *396
 
 it was understood and believed by the parties to the contract, at and before its execution, the Bank of Kentucky, with interest,. was well able to pay, and which sum it did pay, after deducting the. 3900 dollars paid to the defendant Owens, with interest in gold or silver, or its equivalent:' that the contract was not usurious, unless they believe that the contract was a shift or device entered into to avoid the statute against usury, and the prohibition of the charter, notwithstanding the jury should find that the check and notes aforesaid were, in point of fact, of less value than gold and silver.
 

 “3. If the jury find from the evidence in the cause, that the defendants applied to the plaintiffs to obtain from them 5000 dollars of the notes of the President, Directors and Company of the Bank of Kentucky; and in consideration of their delivering, or causing to be delivered to the defendants 5000 dollars of such notes; and the said Bank of Kentucky was then solvent and able to pay the said notes, and fyas so continued up to this time; and that the holders thereof could, by reasonable diligence, have recovered the amount thereof, with six per centum per annum interest thereon, from the time of the delivery of them by plaintiffs to defendants, up to the time of such recovery; and that said arrangement and contract was not made under a device, or with the intent to evade the statutes against usury, or. to evade the law inhibiting the plaintiffs from receiving or reserving upon loans interest at a greater rate than six per centum per annum : then the transaction was not in law usurious or unlawful, and the jury should find for the plaintiffs. .
 

 “ 4. That unless the jury find, from the evidence in the cause, that the advance sale or loan of the notes on the Bank of Kentucky, made by plaintiffs to defendants, was so made as a’shift or device to avoid the statute against usury, or in avoidance of the clause of the act of congress which inhibits the plaintiffs from taking or reserving more than at the rate of six per centum per annum for the,loan, forbearance, or giving day of payment of money: the law is for the plaintiffs, and the jury would find accordingly.
 

 “5. That unless they belieye, from the evidence in this cause, that there was a lending of money, and a reservation of a .greater ra'te of interest than at the rate of six per centum per
 
 *397
 
 annum, stipulated to be paid by defendants to plaintiffs, the law is fot' the plaintiffs, and the jury should find for them. Unless they further find that there was a shift pr device resorted by the parties with the intent and for the purpose of avoiding the law, by which something other than money was advan-ed, and by which a greater rate of interest than six per cent was allowed.
 

 “ 6. That if the defendants applied to the plaintiffs for. a loan of 5000 dollars of the notes of the Bank of Kentucky, and agreed to give therefor their note for 5000 dollars, payable three years thereafter, with interest, and the Bank of Kentucky was then, and continued thereafter to be solvent, and the said Bank of Kentucky did thereafter pay and discharge to the ■ holders thereof the said notes: the said contract was not unlawful, although the notes of the Bank of Kentucky would not- then command, in gold or silver, their nominal amount when offered for Sale er exchange as a commodity or money.
 

 “ 7. That if they find from the evidence that the defendants obtained from the plaintiffs 5000 dollars of the notes of the Bank of Kentucky, or 3900 dollars in a check upon said bank, and' 1100 of its. notes, and in consideration thereof, made the note sued upon: the said transaction was riot therefore Unlawful or usurious, although the notes of th°e Bank of Kentucky were then at a depreciation in value of thirty-three per cent in exchange.for gold and silver.
 

 “ 8. That there is no evidence in this cause conducing to prove that there was a loan by the plaintiffs to the defendants Of notes on the President, Directors and Company of the Bank of Kentucky.”
 

 The court refused to give any of these 'instructions; and upon the prayer of the defendants, instructed the jury as follows :
 

 “
 
 That if they find from the evidence that the only consideration for the obligation declared upon was a loan made by the plaintiffs to Owens of 5000 dollars, in notes of the Bank of Kentucky, estimated at their nominal amounts, part paid in the notes themselves, and the residue in a check drawn by the plaintiffs on the Bank of Kentucky, on the understanding and agreement that the said Owens was to receive the notes on said bank in payment thereof, and he accordingly'did so ;-.that
 
 *398
 
 the Bánk of Kentucky had, before that time, suspended specie payments, and -did not then pay its notes in lawful money ; that .the said notes.then constituted a,general currency in the state of Kentucky, commonly passing in. business and in exchange at a discount-of between thirty and forty per cent below their nominal amounts, and could not have been sold or passed at a higher'price ; that the said facts were known to the plaintiffs and said Owens, yet the plaintiffs passed the said notes ..to.the said Owens, the borrower, at their nominal amounts : - then the transaction was in violation of the act of congress incorporating the plaintiffs, the obligation declared on is void, and the verdict ought to-be-for the defendants.”
 

 The statute of usury of Kentucky of 1798, declares, that no person shall hereafter contract, directly or indirectly, for the loan of any money, wares, merchandize or other commodity, above the value of six pounds for the forbearance of one hundred pounds for a year; and after that rate, for a greater or a lesser sum, or for a longer or shorter time ; and all bonds;, contracts, &c., thereafter made for payment or delivery of any money or goods so lent, on which a-higher interest is reserved or taken than is hereby allowed, shall be utterly void. This clause of the act is substantially a transcript of the statute of 12 Ann, stat. 2, ch. 16, sect. 1 ;■ and, therefore, the same construction will apply to each. In the present case, no interest at all has been taken by the plaintiffs on the 5000 dollars. There was no discount of the accruing interest from- the face of the note, and the interest was payable only with the principal, at the termination of the three years mentioned in the note. If the case, therefore, can be brought within the statute, it must be, not as a taking, but as a reservation, of illegal interest.
 

 The ninth article of the fundamental articles of the charter of the Bank
 
 pf
 
 the United States, (act of 1816, ch. 44, sect. 11) declares, among other things, that the bank “shall not be at liberty to purchase any public debt whatsoever; nor shall it
 
 take
 
 more than at the rate of six per centum per an-num for or upon its loans or discounts.” It is clear that the present transaction does not fall within the prohibition of dealing or trading, in the preceding part of the same article, according to the interpretation thereof given by'this court in
 
 *399
 
 Fleckner v. The Bank of the United States, 8 Wheat. Rep. 338, 351, to which, we deliberately adhere.
 

 It is observable that the words of the article are, that the Bank shall not
 
 take
 
 (not shall not reserve or take) more than at the rate of six per cent. In the construction of the statutes of usury, this distinction between the reservation, and taking of usurious interest, has been deemed very material; for .the reservation of usurious interest, makes the contract utterly void ; but if usurious interest be not stipulated for, but only taken afterwards, there the contract is not void, but the party is only liable to the penalty for the excess. So it was held in Floyer v. Edwards, Cowp. Rep. 112. But in the case of the Bank of the United States v. Owens, 2 Peters 527, 538, it was said, that in the charter,
 
 “
 
 reserving” must be implied in the word “ taking.” This expression of opinion was’not called for by the certified question which arose out of the plea; for it was. expressly averred in the plea, that in pursuance of the corrupt and unlawful agreement therein stated, the Bank advanced and loaned the whole consideration of the note, after deducting a large sum for discount, in the notes of the Bank of Kentucky, at their nominal value.
 

 It is in reference to the usury act of Kentucky, and this article of the Bank charter, that the various instructions asked or given are to be examined. But before proceeding to consider them severally, it may be proper to remark, that in construing the usury laws, the uniform construction in England has been, (and it is equally applicable here) that to constitute usury within the prohibitions of the law, there must be an intention knowingly to contract for or to take usurious interest; for if neither party intend it, but act bona fide and innocently, the law will not infer a corrupt agreement.. Where, indeed, the contract u'ponits very face imports usury, as by an express reser-
 

 tion of more than legal interest; there is no room for presumption ; lor the intent is apparent; res ipsa loquitur. But where the contract on its face is for legal interest only, there it must be proved that there was some corrupt agreement or. device, or shift, to cover usury ; and that it was in the full contemplation of the parties. These distinctions are-laid down and recognized so early as the cases of Button v. Downham, Cro. Eliz. 642 ; Bedingfield v. Ashley, Cro Eliz. 741 ; Roberts
 
 *400
 
 v. Tremayne, Cro. Jac. 507. The same doctrine lias been acted upon in'modern times, 'as-in Murray v. Harding, 2 W. Bl. 859 ; where Gould, justice, said that the ground and foundation of all usurious contracts, is the corrupt agreement; in Floyer v. Edwards, Cowp. 112; in Hammett v. Yea, 1 Bos. and Pull. 144; in Doe v. Gooch, 3 Barn. and Ald. 664; and in Solarte v. Melville, 7B. and Cres. 431.
 

 The same principle would seem to apply to the prohibition in the charter of the bank, There must be an intent to take illegal interest, or,.in the language of the law, a corrupt agreement to take it, in violation of the charte?; and so it was stated in the plea in the case of the Bank of the United States v. Owens, 2 Peters 527. The quo animo is, therefore, an essential ingredient in all cases of this sort.*
 

 Now, it distinctly appears in the evidence, as has been already stated, that-* no interest or discount whatsoever was actually tdken on the note ; and oh the face of the note, there was no reservation of any interest but legal interest. So that there has been no taking of usury, and no reservation of usury on the face of the transaction. The case then resolves itself into this inquiry : whether, upon the evidence, there was any corrupt agreement, or device, or shift, to reserve or take usury; and in this aspect of the case, the quo animo, as well as the acts of the parties, is most important.
 

 ' With these principles in view, let us now proceed to the examination of the instructions prayed by the plaintiffs. The substance of the first instruction is, that if the contract was fairly made by the parties, without any intention to evade the laws against usury, but that the parties, making the contract, intended to exchange credits for the accommodation of Owens; that the Bank of Kentucky was solvent, and able to pay.its debts by coercion: then the contract was not void for usury, nor contrary to the charter of the batik, notwithstanding the parties knew that the Bank of Kentucky didot pay specie for its notes without coercion; and trtat, these notes were in exchange at a depreciation of from thirty-tprea to forty per cent below par. We are of opinion, that' this instruction ought to bawe been .. given. It excludes
 
 any
 
 .intention of violating the Jaws* against usury; and it puls the-case as a bona fide exchange of credits for the.accommodalion of Owens. Such an exchange is not
 
 *401
 
 per se illegal; though it may be so, if it is a mere shift or device to cover usury. If the application be not for a loan of money, but for an exchange of credits or commodities, which the parties bona fide estimate at equivalent values; it seems difficult to find any ground, on which to rest a legal objection to the transaction. Because an article is depreciated in the market, it does not follow that the owner is not entitled to demand or require a higher price for it, before he consents to part with if. .He may possess bank notes, which to him are of par value, because he can enforce payment thereof, and for many purposes they may pass current at par, in payments of his own debts, of in payment of public taxes; and yet their marketable value may be far less. If he uses no disguise; if he seeks not to cover a loan of money under the pretence of a sale or exchange of them ; but the transaction is, bona fide, what it purports to be; the law will not set aside the contract, for it is no violation of any public policy, against usury.
 

 We are also of opinion, that the second instruction ought for similar reasons to have been given; and indeed if stands upon stronger grounds. ■ It puts the case, that there was no intention to violate the charter or the statute against usury; that' the contract was for the accommodation of Owens; that the.Bank of Kentucky was indebted to the plaintiffs in a.sum exceeding 10,000 dollars, bearing an interest of six per cent (which the check would reduce pro tanto); that the Bank of Kentucky was able to pay the amount with interest in gold or silver, and did pay it., after deducting the check of 3900 dollars; and then asserts that, under such circumstances, the contract was not usurious, unless the jury believe that the contract was a shift or device entered into to avoid the statute against usury; notwithstanding the check and tire bank notes were in point of fact of less value than gold and silver. So that in fact, it puts the instruction upon the very point, upon which the law itself puts transactions of this sort — tire quo animo of the parties. Did they intend usury, and make use of any shift or device to cover a loan of. money
 
 1
 
 Or did they, bona fide, intend a loan of bank notes, which to the lender were of the full value of their numerical amount, and were so treated . bona fide by the borrower
 
 1
 
 Unless the court were prepared to say, (which we certainly are not) that all negotiations for
 
 *402
 
 the sale or exchange of bank notes, under any circumstances, must, to escape the imputation of usury, or thé prohibition of the charter, be merely at their, marketable value at the time, though worth, more to both parties ; the instruction was in its terms unexceptionable.
 

 The third instruction is governed by the sainé reasoning. It puts the case, that the application was made for a loan, not of money,'but for notes of the Kentucky Bank, to. the amount, of 5000 dollars, in Consideration ..of the note sued on.; that.'the Bank of-Kentucky was solvent and .able. to pay its notes ; that the holders thereof could, by reasonable diligence, have recovered tlie amount thereof, with interest at the' rate pf six per cent per annum ; and that there was no device or intent to evade the statute against usury,.or theprohibition of the charter; and then' asserts that under such circumstances the transaction was not, in law, usurious. And líete, it may be added, that if. the case was as stated,- (and. the evidencemanifestly conduced to establish it) it is clear thaf rthe plaintiffs could, no.t,. by. the regulation, entitle themselyes.-ld, more interest than they were .already entitled to'against the Bank of Kentucky. It would be a mere exchange of securities, by which the plaintiffs did not reserve and could not obtain , more than the legal rate of interest. If A holds the note of B for 100 dollars and legal" interest,, and he exchange it with C for his note for the same sum and legal interest, and B and C are both solvent, the transaction in no manner trenches upon the statute, against usury.
 

 The fourth instruction puts the case in a more general form; but the same principles apply-to it..
 

 The fifth instruction' puts the case in the most pointed manner,'whether there was an intended loan of money and a reservation of illegal interest, and a shift or device to cover it, and evade the law by advancing something other than money on the loan. If there was not, then it asserts (and in our judgment. correctly) that the jury ought to find for the plaintiffs.
 

 The sixth and seventh instructions fall under the same considerations, and are equally unexceptionable.
 

 The eighth instruction was properly refused, and ought not. to have been given. The court could not judicially say, that there was lfo evidence conducing to prove that there was a
 
 *403
 
 loan by the plaintiffs to the defendants of the notes of the Bank of Kentucky. There was evidence proper for the consideration of the juiy; and the intent was to be gathered by them .from the whole circumstances of the transaction.
 

 In regard to the instruction given by the court upon the prayer of the defendants, it was probably given under the impression, that the case was governed by the decision of this court, in the Bank of the United States v. Owens, 2 Peters 527. That case, however, in our opinion, turned upon con-, siderations essentially different from those presented by the present,record. The questions certified in that case arose upon a demurrer to a plea of usury, and the demurrer in terms admitted, that the agreement was unlawfully, usuriously and corruptly entered into ; so that no question as to the intention of the parties, or the nature of the transaction-was-put. The transaction was usurious, and the agreement corruptand the question then was, whether, if so, it was contrary to the prohibitions of the charter and the contract was void. In the present case, the questions are very different. Whether the agreement was corrupt and usurious ; or bona fide, and without any intent to commit usiuy or to violate the- charter ; are the very points which the jury weie called upon, under t.hé instructions asked of the .court, tó decide. The decision in 2 Peters 527, cannot, therefore, be admitted to govern this; for the quo animo of the act, as well as the act itself, constitute the gist of the controversy.
 

 In our opinion, the instruction asked by the defendants, ought not to have been given. It excludes altogether any consideration of the bona fides of the transaction, qnd the intention of the parties, whether innocent or usurious; and puts the bar to the recovery, (after selecting a few facts) substantially upon the ground, that the bank notes loaned were a known depreciated - currency, passing in exchange and business at a discount of from thirty to forty per cent, and were passed at tlieir nominal amounts by the plaintiffs to the defendants ; without any reference to the fact, whether there was any design to comiiiit usury, or whether- the notes were in reality of a higher intrinsic value, or of their full nominal value to the parties'; or whether there was in the transaction either a taking or a reserval ion of more than six per cent
 
 *404
 
 interest contemplated by the parlies. .From what has. been already stated, these constituted the turning points of the case; and the instruction could not properly be given without making them a part of the inquiries before the, jury, upon which their verdict was to turn.
 

 Upon the whole, we are of opinion, that the first seven instructions prayed by the plaintiffs, ought to have been given to the jury ; and the instruction given by the court at the request of the defendants, ought to have been refused; and therefore, for these errors, the judgment ought to be reversed, and the cause remanded to the circuit court, with directions to award a venire facias de novo.
 

 This cause came on to be heard on the transcript of the record from the circuit court of the United States for the dis-frict of-Kentucky, and was argued by counsel ; ' on consideration whereof, it is the opinion of this court, that there is error in the opinion of the circuit court of the district of Kentucky, in refusing to give the instructions prayed for by the plaintiffs in their first, second, third, fourth, fifth, sixth and seventh instructions, prayed for in the bill of exceptions stated; and there is also error in the opinion of the court in giving the instruction prayed for by the defendants in the same bill of exceptions stated. It is, therefore, considered by the court that, for the errors aforesaid, the judgment of the said circuit court be, and the same is hereby reversed and annulled, and that the pause be remanded to the circuit court with directions to award a venire facias de novo.