Cowen, J. dissenting.
If the advance to Miller is to be regarded as a loan, I apprehend we cannot disturb the report, unless the referees erred in rejecting the question put to Clary. There was sufficient evidence to warrant them in finding considerable disparity between the value of the* advance and the amount at which it was estimated. That being so, they. were authorized to take another step, and pronounce the transaction a device to cover usury. And though we might even differ from them, that furnishes no argument for setting aside their report. They occupied the place of a jury, and had to deal with a body of evidence upon which it was their peculiar province to form their own conclusions.
Considerable stress was, in the course of the argument, laid upon the maimer in which they have expressed themselves in stating their conclusion, viz. “A majority, &c, were of opinion, as matter of law, that the said note was void for usury.” ’ This is supposed to negate, by implication, that they thought that there was any device, and to *231 indicate that they found the usury as the necessary result of the transaction. Were that so to he understood, it might form an argument for directing them to reconsider the matter. But it appears to me that the form of expression relied on, furnishes by no means a safe ground of judgment. The expression is equivocal. It may as well mean, matter of law arising on the fact of the device, which, on the whole case, they believed had been resorted to, as the more obvious features of the transaction. If they intended the one or the other, it was easy to say so; but leaving that doubtful, the safer course is to look at the report in an aspect which cannot be mistaken, viz. as a general report for the defendants, and inquire, whether the referees, sitting as a jury, were authorized, on the whole case, to find that the note was infected with usury.
The main effort of the plaintiff’s counsel on the argument was addressed to the point, that, to call the advance to Miller, as both he and Clary did, a loan, was to be guilty of a misnomer ; that the loan proposed was declined ; and, at least so far as the notes advanced were concerned, the whole was a mere exchange of credit. Had the advance consisted wholly of the notes, which were, no doubt, considered good at the auction, the case would furnish a better reason for adopting the view suggested. The transaction would have been literally an exchange of credits; and though at an obvious loss on the side of Miller, it was open to the explanation that he held a large debt against Rathbun’s estate, expecting no more than a partial and remote payment. The purchase of the notes, therefore, and paying a larger sum than they were worth, was, in effect, but throwing off something more of a bad debt than he would lose by awaiting the dividend. Yet, even in such case, the transaction beginning by an express proposition for a loan, it is too much to deny, that the substitution of depreciated notes might not very well be pronounced, by triors of the fact, one of those numerous disguises by which lenders seek to obtain with impunity more than seven per cent, for their money. The request was, in *232 terms, for a loan of money at seven per cent.; and they might infer that it was made in depreciated notes at par,, to a man who wanted them for the sake of the money they would bring, no matter how much below their nominal amount. That the lender was a trustee, may detract from the weight of the evidence by which the loan is sought to be impeached; but it is a circumstance far from being conclusive. Had the exchange even been requested by the borrower, in the first instance, that would not be conclusive; but here it was proposed in answer to the request for a loan of money.
The case, however, is on its face more than a simple exchange of credit. The request was for a loan of $12,000; and the answer was, “ I cannot loan you money to that amount; but 1 will let you have about one third in money, and the residue in depreciated notes, taking your note on time upon interest with good security, for the uttermost farthing due on the notes you take, even including the interest accrued at the time,
' though that will not, in my hands or yours, carry interest.” Such a case is far from being met, or even rendered doubtful, by the cases to which we have been referred. (Bank of the United States v. Waggener, 9 Pet. 378, 400, 401. Stewart v. Mechanics’ and Farmers’ Bank, 19 John. R. 506 to 512.) On the contrary, these cases assume and express]y hold, that if the loan of depreciated notes be intended by the parties to have the effect of fetching more than seven per cent., it is usurious. To be sure they treat the question of usury as in such case resting upon intent, and hold that this must be found by the jury, or the court of chancery which comes in the place óf a jury on the question arising in that court. Another case cited was intended as an answer to the objection, that interest on the notes was cast, and made to draw interest as money. (Marvin v. Feeter, 8 Wendell, 533.) But the transaction there passed upon, was not á loan. It was a sale of the notes on which interest was cast, without the pretence of any shift to evade the statute of usury. Izi the case before us, several of the notes were not yet - due when *233 they were transferred; these and others already due were ’of questionable value. Admitting them to have been equal to gold and silver in the market, yet no man would advance specie for the' interest accrued on notes not yet due, without a rebate. To this I admit the referees might answer, that it was such a trifle as the law would not regard; but we cannot thus answer for them. Besides, this circumstance does not stand alone. There was very little probability that any considerable portion of the notes would be promptly paid; and no one pretended that they could be sold in market short of a considerable sacrifice. Yet for the utmost nominal value of such a commodity, the assignees had received Miller’s note at twelve- months, with good security, on interest; and the referees were fully warranted in adding as an inference, though the^ fact was denied by Clary, that the notes were imposed as a condition of the loan. Upon no principle that I am aware of could our interference with this report as against the weight of evidence be deemed even plausible.
Clary was asked, whether there was any intention, shift or device, on his part, to get more than seven per cent. The question would have been very exceptionable as a leading one, had it not been put to the witness on cross-examination ; but it was exceptionable also, as calling on him to pronounce broadly upon the very point in issue before the referees. The answer must have been matter of opinion, as derived from what he remembered in respect to the operations of his own mind, even had it been confined to mere intention. Again, the question covered not only intention, but shift and device. This was about the whole issue, unless it be conceded that the transaction was usurious, per se. Why not put the question directly—“ in your opinion were you guilty -of usury ?” It would be a short, but I apprehend not a very satisfactory mode of inquiring into the point on trial. . The witness is thought to have been peculiarly qualified to speak concerning his own intent. So he was to the mere moral intent, the secret operations of his own mind. But these were not material one *234 way nor the other. Whether his mind was ingeniously busied in avoiding, or obtaining seven per cent., would not alter the" result. There being a loan, and the note taken, and those sold, being such as the parties had agreed upon, the real value of the latter, as compared with the amount secured, was the test. The disparity of the latter being shewn, and that known to the parties, the shift or device was complete in fact; a provision for more than seven per cent, followed ; and the intention would be an inference of law. On the other hand, had the result been a provision for less than seven per cent., the legal inference would have been the other way, how strongly soever the party might have intended to secure usurious interest. That a man did or did not provide for a usurious rate of interest in his heart, makes no difference with the law. It deals with actions, and infers the intent with which they are done from the consequences that naturally flow from them. The question was. properly overruled. I think the motion to set aside the report of the referees should be denied.
A majority of the court, however, being of a different opinion, therefore,
Motion granted.(a)

 At the July term following (1841) tne rule for a reference was set aside by-consent ¡ and the cause ordered to be tried at the circuit.