## In re MANSFIELD STEEL CORPORATION.

District Court, E. D. Michigan, S. D.
February 13, 1929.

No. 6096.

Lucking, Hanlon, Lucking & Van Auken, of Detroit, Mich. (Harry Helfman, of Detroit, Mich., of counsel), for claimant Stephen A. Griggs.

George E. Brand, of Detroit, Mich, for trustee in bankruptcy.

SIMONS, District Judge. This bankruptcy cause is before the court on a petition filed by Stephen A. Griggs, a claimant, as secured creditor, against the estate of the Mansfield Steel Corporation, the bankrupt herein, to review the order of one of the referees in bankruptcy for this district disallowing the claim of the claimant for interest on the indebtedness of the bankrupt to him, on the ground that the contract between the claimant and the bankrupt reserving such interest was usurious.

The relevant facts, as disclosed by the record and hereby found by this court, may be sufficiently stated for the purposes of this opinion as follows:

The claimant, a British subject, residing in the city of Walkerville, in Canada, where his principal business was located, loaned to the bankrupt, a Michigan corporation engaged in business in the city of Detroit, Mich. (which city is separated from the city of Walkerville by the Detroit river), various sums of money, at different times during the years 1921 and 1922, aggregating the principal sum of approximately $88,000. The greater part of such amount was paid to the bankrupt in the form of checks drawn by the claimant on a bank in Walkerville in which he kept a commercial account. On receipt of each of these checks, a promissory note for the same amount, dated at Detroit, and made payable, with interest at the rate of 7 per cent. per annum (the maximum legal rate of interest prescribed by the laws of Michigan), on demand, at a bank in Detroit in which the bankrupt kept a commercial account, was executed and delivered by the bankrupt to the claimant. The checks were deposited by the bankrupt in its account in the said bank in Detroit and thereafter forwarded for collection by that bank to the bank in Walkerville on which they were drawn, which honored and paid them, in Canadian funds, and charged the amount thereof, at par, to the claimant. At the time when these loans were made, money of the United States was at a premium in Canada, and Canadian money was at a discount in the United States, but was legal tender at par for payment of debts

in Canada. When the bankrupt converted these Canadian checks into American money, by depositing them in its bank in Detroit, it was compelled by said bank to pay the current exchange thereon, in the amount of the prevailing disparity between the funds of the two countries. This disparity disappeared before claimant filed its claim herein against the bankrupt and at the present time the money of the United States and that of Canada are on a parity. No part of these loans and no interest thereon has been paid.

The trustee in bankruptcy admits that the principal of such loans, in the amount already stated, is due and payable, but contends that the claimant has forfeited the right to any interest on this indebtedness, on the ground that, in making these loans in Canadian money and receiving therefor promissory notes payable in the United States, the claimant sought, in substance and effect, to charge the bankrupt with usurious interest, in violation of section 5997 of the Michigan Compiled Laws of 1915, providing that "It shall be lawful for the parties to stipulate in writing for the payment of any rate of interest, not exceeding 7% per annum," and of section 5998 of said Compiled Laws providing that "No bond, bill, note, contract or assurance, made or given for or upon a consideration or contract, whereby or whereon a greater rate of interest has been, •directly or indirectly, reserved, taken or received, than is allowed by law, shall be thereby rendered void; but in any action brought by any person on such usurious contract or assurance, ∶ ∶ ∶ if it shall appear that a greater rate of interest has been, directly or indirectly, reserved, taken or received, than is allowed by law, the defendant shall not be compelled to pay any interest thereon."

The referee in bankruptcy adopted the view of the trustee in bankruptcy in this connection, and held that "the methods employed not only gave claimant the advantage of the use of Canadian funds in America at par when same were at a discount, but provided for payment in America in United States funds then at par in America and at a premium in Canada," that "the foregoing exactions constituted usury and were a violation of the Michigan statutes relating thereto," and that the claim of this claimant for interest was "tainted with usury, as a result of which claimant is not entitled to receive any interest on any sums loaned by him to the bankrupt involved in said claim." The claimant complains of, and here seeks to review, this ruling of the referee, and the cor-

rectness of such ruling is the sole subject presented for determination.

 After close and careful consideration of the evidence disclosed by the record and of the able arguments and briefs submitted by counsel, I am unable to agree with the contentions urged by the trustee in this connection. It is, of course, elementary' that, as expressed by the United States Supreme Court in Houghton v. Burden, 228 U. S. 161, 33 S. Ct. 491, 57 L. Ed. 780, "The burden to make out the usury is strongly upon the" party asserting it. It must be borne in mind that in this class of cases, in the language of the court in Clemens v. Crane, 234 Ill. 215, 84 N. E. 884, "Where a transaction is susceptible of an innocent construction and can only be held usurious by wresting it from its relation to other facts or by imputing to the facts a sense and meaning which they cannot reasonably bear, it is the plain duty of the court not to decree a forfeiture but to uphold the contract and enforce its obligation." It must also be remembered that, as stated by the court in Lassman v. Jacobson, 125 Minn. 218, 146 N. W. 350, "The test of a usurious contract is: Will its performance result in producing to the lender a greater return for the use of the amount loaned than is allowed by law, and was that result intended? Smith v. Parsons, 55 Minn. 520, 57 N. W. 311. Expenses incident to making the loan and furnishing the lender satisfactory security for its repayment can in no sense be considered compensation for the use of the money loaned." The general principles here involved were fully considered and discussed by the United States Supreme Court in its opinion in the leading case of Bank of United States v. Waggener, 9 Pet. 378, 9 L. Ed. 163, in which the court, speaking through Mr. Justice Story, said:

"In construing the usury law, the uniform construction in England has been (and it is equally applicable here), that to constitute usury, within the prohibitions of the law, there must be an intention knowingly to contract for or to take usurious interest; for if neither party intend it, but act bona fide and innocently, the law will not infer a corrupt agreement. Where, indeed, the contract, upon its very face, imports usury, as by an express reservation of more than legal interest, there is no room for presumption, for the intent is apparent; res ipsa loquitur. But where the contract on its face is for legal interest only, there it must be proved, that there was some corrupt agreement, or device, or shift, to cover usury; and that it was in the full contemplation of the parties.

\* \* \* Now, it distinctly appears in the evidence, as has been already stated, that no interest or discount whatsoever was actually taken on the note; and on the face of the note, there was no reservation of any interest but legal interest. So that there has been no taking of usury, and no reservation of usury, on the face of the transaction. The case then resolves itself into this inquiry: Whether, upon the evidence, there was any corrupt agreement, or device or shift, to reserve or take usury; and in this aspect of the case, the quo animo, as well as the act of the parties, is most important. \* \* \* If the application be not for a loan of money, but for an exchange of credits or commodities, which the parties bona fide estimate at equivalent values, it seems difficult to find any ground on which to rest a legal objection to the transaction. Because an article is depreciated in the market, it does not follow, that the owner is not entitled to demand or require a higher price for it, before he consents to part with it. He may possess banknotes, which to him are of par value, because he can enforce payment thereof, and for many purposes, they may pass current at par, in payment of his own debts, or in payments of public taxes; and yet their marketable value may be far less. If he uses no disguise; if he seeks not to cover a loan of money, under the pretense of a sale or exchange of them; but the transaction is, bona fide, what it purports to be; the law will not set aside the contract, for it is no violation of any public policy against usury."

■ Applying these principles to the facts in the present case, and considering these facts in the light of such principles, I cannot avoid the conclusion that the trustee has failed to sustain the burden, imposed on him, of showing the usury with which he charges the claimant. The claimant testified, without contradiction or dispute, among other things, as follows:

"Q. At the time you gave these checks on the Canadian Bank of Commerce to the Mansfield Steel Corporation, or before that time, did you have some talk with anybody representing the Mansfield Steel Corporation to the effect that your check was drawn on the Canadian Bank of Commerce and would be payable in Canadian funds? A. I talked with Mr. Mansfield in regard to it.

"Q. He was President of the Mansfield Steel Company? A. Yes sir.

"Q. And the chief active executive? A. Yes sir.

"Q. And what was your talks? A. I told him I could not stand the exchange coming so strong, and ultimately I expected that the funds of the two countries would come back to parity and I would get my pay on that basis, and that I couldn't stand that loss, that I had to borrow the money to take care of the loans and that I would have to settle later on money at a par with American money, and Mr. Mansfield agreed to it, and I could cite some instances, cases where he sent his man over to my office in Walkerville to get payroll checks, and it was used largely for payrolls—they became broke every week and a man would have to come to Walkerville for money to pay the men off, and he kept pulling so hard I couldn't stand it—I had to take that course."

It appears from the record that the parties to this controversy had varied and extensive dealings and relations with each other before, during, and after the time of the making of the loans herein involved. It is unnecessary to review or discuss those dealings or relations in detail here. It is sufficient to point out that the facts and circumstances shown by the evidence indicate that the making of these loans was prompted by a desire on the part of the claimant to render to the bankrupt corporation helpful assistance, which was sorely needed, was urgently solicited, and was of material benefit to that corporation. It does not appear that the giving of the Canadian checks or the receipt of the promissory notes in question was at the request or suggestion of the claimant or was actuated by any desire or intention on his part to thereby obtain a usurious rate of interest on the loans so made. The difference between the places of payment of such checks and notes may well have been due to the corresponding difference between the places of residence of the parties. · It is not shown that the claimant expected that the disparity between the currency of the two countries prevailing at the time of the making of the loans would continue until the time of payment of such loans. Indeed, his expectation in that regard appears to have been to the contrary, and to have been justified by subsequent events.[1]

It is true that, in connection with one loan of $1,000, made in funds of the United States, the bankrupt paid to the claimant the exchange on that amount, in the sum of $45, and considerable stress is laid by the trustee upon that circumstance. In view, however, of the total amount of these loans, approximately $88,000, including approximately

[1] With this expectation, the anticipated result would have been the same had the notes been payable in Canadian currency.

$17,000 paid to the bankrupt in American funds, apparently without the receipt by the claimant of any payment for discount or exchange upon any portion of such loans, the single isolated instance of exchange just mentioned is, in the opinion of the court, insufficient to satisfy the burden of proof imposed by law upon the trustee in this connection. After earnest consideration of all of the facts and circumstances surrounding the transactions here involved, I reach the conclusion that the trustee has failed to show, by the requisite preponderance of evidence, that "the real purpose of the negotiations and transactions was, on the one side, to loan money at usurious interest reserved in some form by the contract and, on the other side, to borrow upon the usurious terms dictated by the lender." Philadelphia Warehouse Co. v. Seeman (C. C. A. 2) 7 F.(2d) 999, at page 1001; Joffe v. Bonn, 14 F.(2d) 50 (C. C. A. 3).

It follows that the contention of the trustee must be overruled, those of claimant sustained, and an order entered setting aside the order of the referee complained of, in so far as such order denies to the claimant interest on the indebtedness here involved, and remanding the cause to the referees for further proceedings in conformity with the terms of this opinion. There being no dispute as to the liability of the trustee for the principal of the loans, there appears to be no just reason for not approving the proof of claim to that extent, if review hereof is sought by the trustee.

