## JOY v. PROVIDENT LOAN SOCIETY.
### No. 3995.

Court of Civil Appeals of Texas.    Texarkana.
March 27, 1931.

Rehearing Denied April 2, 1931.

Thos. R. Bond, of Terrell, for appellant.

M. B. Solomon and Turner, Rodgers & Winn, all of Dallas, for appellee.

LEVY, J. (after stating the case as above).

It is pointed out by appellant that he was entitled to recover the penalty for usury, because the facts of the case conclusively showed the loan society charged and received as interest on the several distinct loans of money a greater per centum on the amount of each of the loans than authorized by law. The question for determination arises upon undisputed facts, affirmatively showing that the loan society made several distinct loans of money, and received in pawn as security certain jewelry, and demanded and collected per month "2% a month" of the amount of each distinct loan. There was a charge per month on the loan of $100 of $2, and on the loan of $50 of $1, and on the loan of $20 of 40 cents. Was the "2% a month" usurious interest? Two things are necessary to show usury: First, a loan; secondly, the taking of interest or compensation in excess of the maximum sum allowed by statute in consideration of the loan. Whenever these two facts are shown to exist, the law pronounces the intent with which they are done wrongful. For in such a case, as by express reservation of more than legal interest, there is no room for presumption, for the intent is apparent. Bank of United States v. Waggener, 9 Pet. 378; 9 L. Ed. 163; Slaughter Co. v. Eller (Tex. Civ. App.) 196 S. W. 704. The intent which enters into and is essential to constitute usury is simply the intent to take and reserve more than that permitted by statute for the loan. Every agreement to take interest in excess of the highest legal rate is a violation of law and usurious. 2 Elliott on Contracts (1913

Ed.) § 967; article 5071, R. S. The character of the transaction in evidence is not involved in any doubt. The pawn ticket, which reflects the agreement, shows on its face that the intent was to actually charge, receive, and collect "2% per month" on the amount of the loan in the form of interest and storage charges, as the sole consideration for the loan. The per centum added for "storage charges" was not for services for the particular loan. Such per centum charges represented and included a pro rata share of the society's continuous expenses for storage and insurance irrespective of the outlay on particular loans. In other words, it was the pro rata cost of the society's overhead expenses. In the light of the evidence, the agreement is susceptible of no other meaning.

The manager of the loan society explained that the "2% per month" represented in part the highest statutory per centum per month as interest and in the other part a pro rata share or per centum of all the society's expenses arising generally from "storage and insurance." As he testified, he first "figured up how much it would cost to run this business of ours," and, after ascertaining that per centum, he then added to the highest legal rate of interest of 10 per cent. per annum enough more per centum of the society's continuous expenses for "storage and insurance" as "would make 2% a month." The "storage and insurance" expenses were shown to be the continuous cost, outlays, and charges incident to the maintenance and prosecution of the business of the loan society, irrespective of the outlay on particular loans. The transaction cannot be explained upon any other theory. A "yearly rent" was paid for safety boxes at the bank wherein the loan society kept all pledges of every borrower for purposes of safe-keeping. The "insurance" consisted of a general policy in favor of the loan society and for its benefit in case of loss of the pledges against "fire, breakage, holdup, and messenger." As shown "about $200,000.-00 of jewelry was kept stored in the office and in bank boxes." In no wise were such expenses so incurred intended to be charged as expenses for special services rendered to borrowers on particular loans. There was no added benefit to the particular borrower by reason of such expenses. All such expenses were the continuous obligation of the loan society and beneficial to it in its business in the form of overhead expenses. As for the cost of storage for the care of the pledged property, the ordinary obligation of a pawnbroker, as of other pledges, is to exercise the degree of care and diligence that an ordinarily prudent person would exercise for his own property. 48 C. J. p. 565. As for the insurance, the general policy of insurance, as shown was taken out, protected the loan society's liability generally for loss through its

default or neglect. It is difficult to understand, as the evidence appears in the record, why the charge was made for "storage and insurance" unless to get a greater compensation for the loan of the money than the regular rate of interest would give. We are unable to construe the evidence as intending the charges so made to be charges solely and only for special services in the storing of the property pledged. There was no dual relation intended to be created of lender and of storer. So, when the lender requires of the borrower that he pay, in addition to the highest legal rate of interest, the pro rata part of overhead or continuous expenses of the business, the lender is but foisting upon the borrower its own obligation, irrespective of the outlay on particular loans. That becomes a profit to the loan society in excess of the highest legal interest, and beyond the statutory authorization solely for the loan of money.

■■ The statute relating to pawnbrokers does not authorize a pawnbroker to charge and receive solely in consideration for the loan of money a charge in addition to the highest legal interest for storage or other service irrespective of any connection with such particular loan. Neither does the statute exempt or except pawnbrokers from the general law of usury. As defined by the statute, usury is: "Interest in excess of the amount allowed by law." And the word "interest" is defined as being "the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money." Article 5069, R. S.; Parks v. Lubbock, 92 Tex. 635, 51 S. W. 322, 323. The limit of the "compensation," reckoned by a percentage, allowable for the loan or the use of money is by statute expressly fixed at "not exceeding ten per cent. per annum on the amount of the contract." Article 5071, R. S. The real inquiry in the case, then, is whether there had been a borrowing and lending at a greater rate of "interest" than the law allows. This becomes purely a question of fact about which there is no dispute. It is believed that the plaintiff has made out a case entitling him to a recovery of double the amount of the interest paid. McDaniel v. Orr (Tex. Com. App.) 30 S.W.(2d) 489. The maximum statutory rate of interest was clearly enlarged by adding thereto storage charges irrespective of any outlay of particular pledges in consideration solely for the loan of the money. An increase or profit above the premium allowed by law for the use of money is an illegal profit, and is usury. 4 Blackstone, Com. 156.

The judgment is therefore reversed, and judgment is here rendered for the plaintiff against the appellant loan society for the sum of $151.60, together with all the costs of this appeal and of both of the trial courts.