1840.

WILLOUGHBY
v.
COMSTOCK.

October 20,

*Pleading.*
*Judgment*
*creditor.*
*Fi. fa.*

DEMURRER to a judgment creditor's bill founded on a judgment docketed since the passing of the act which took effect on the first of June, one thousand eight hundred and forty. The bill did not show at what time the action had been commenced, but gave the test of the *fi. fa.* the thirteenth of July and the return the sixteenth of the same month.

---

WILLOUGHBY *v.* COMSTOCK, President of the Mechanics' Banking Association.

---

Certain state stock, held by a banking association, was depreciated in the market, yet a party chose to take it at par and give his bond and mortgage for it at the par amount; *Held,* not to be a usurious transaction.

*Nov.* 11,
1840.

*Usury.*

MOTION to dissolve an injunction on bill and answer. The bill showed that the complainant made and delivered

a bond and mortgage in favor of the defendant Eleutheros D. Comstock, as president of the Mechanics' Banking Association, for securing sixty thousand dollars and interest. That the consideration for the bond and mortgage was, in part, a loan of fifty thousand dollars from the said Mechanics' Banking Association and which was made by the latter, transferring to the complainant, at par, fifty thousand dollars of the five per cent. stock of the state of Maine, which was then a depreciated stock and worth in the market about ninety per cent. and bought by the association at that value ; and the further consideration of the said bond and mortgage was the taking of ten thousand dollars of the capital stock of the association at par and which was subscribed for and taken by the complainant. That although both of the said amounts were included in the said bond and were component parts of the said sum of sixty thousand dollars, they were, in truth, distinct transactions, the one a loan for fifty thousand dollars and the other a subscription for ten thousand dollars of stock ; that the said loan was preceded by an undertaking in writing by the said Mechanics' Banking Association, as follows :

"New-York, Sept. 29, 1838. The Mechanics' Banking Association of the city of New-York are to transfer to the order of Samuel A. Willoughby, Esq., fifty thousand dollars in the five per cent. Maine stock (provided Messrs. S. Parker & Co. deliver the said Maine stock to us) upon the receipt of a bond and mortgage for the same amount, say mortgage to become due same time as the stock, with the privilege of paying it off at any time, provided the comptroller will receive it in that way. I will go to Albany to-morrow evening and make the exchange for you with the comptroller—after that time it will be too late as I understand. John Ward and Co. offer me $45,000 of Michigan 6 per cent. stock redeemable in 1863 at par, but they want cash. If your association prefer it, I will make the negotiation for $100,000, but $50,000 will answer my purpose; and I only wait your answer at one o'clock to-morrow to make my arrangements in another quarter. Very respectfully, I am your most obedient servant,

"SAMUEL A. WILLOUGHBY."

The answer further showed that, at the time of such application, the complainant represented to the association that Par-

ker & Co. held the said amount of stock of the state of Maine and were willing to receive in exchange therefor, at par, the same amount of stock of the association at par; that a mutual arrangement was thereupon made by and between the said association and the complainant ·and the said Parker & Co., by virtue of which the association agreed with the complainant, upon receiving his bond and mortgage for fifty thousand dollars payable ten years after date with interest at six per cent. to be approved of by the comptroller and the bond and mortgage committee of the said association, to transfer to his order the same amount of the five per cent. Maine stock at the par value thereof, provided the same was delivered to them by Parker & Co.; that an agreement in duplicate to this effect was signed (and a copy was set forth in the bill.) That, in pursuance of such agreement, Parker & Co. signed the following written consent.

"New-York,· Sept. 29, 1838. In consideration that the Mechanics' Banking Association of the city of New-York have agreed to purchase of me fifty thousand dollars of the stock of· the state of Maine, bearing five per cent. interest and payable in 1848, payable in the stock of the Mechanics' Banking Association at par, we hereby agree to deliver to them the said Maine stock within twelve days of this date. The interest on the state stock and on the instalments, as paid by other subscribers of the first of August, to be settled at the time of exchange of the several stocks.　　　　　　PARKER & Co.

"It is understood by us that the bank are not bound to us to receive the state stock above, unless they are furnished with mortgages to the same fifty thousand dollars, with interest at six per cent. per annum payable semi-annually to be approved of by the comptroller of this state and the bond and mortgage committee of the said Mechanics' Banking Association." · ·

That the said Maine stock was afterwards delivered to the said Mechanics' Banking Association by the said Parker upon a contract with him of exchange—the said association taking fifty thousand dollars of the Maine five per cent. stock at par for the same nominal amount of the stock of the said Mechanics' Banking Association at par, both of the said stocks being, at that time, depreciated stocks in the market and neither worth over ninety-two per cent. The bill charged that at the time of

the loan it was well understood between the complainant and defendant that the said stocks were worth in the market and would sell for only ninety-two per cent., being eight per cent. less than the par value—and that the loan was made in express violation of the third title of the fourth chapter and second part of the Revised Statutes, entitled " of the interest of money." The bill also showed that an action had been commenced against the complainant by the said association upon his bond. Also, that the complainant had passed the said stocks away in exchange for mortgages and country notes and that the persons who took them had sold the same at eighty per cent., being the market value. That the complainant had not realized the par value of the stock in such exchange, nor would he at any time do so, but how far short of it he would fall he could not tell until the whole transaction was closed. *Prayer*, that the said action might be stayed and the bond and mortgage given up to be cancelled—also, for further relief.

The answer denied that any loan had been made; and averred the truth to be that the complainant made an application in writing for stock of the state of Maine to the amount of fifty thousand dollars at the par value and which application was in the words following, namely :

" New-York, September 27, 1838. To the president, directors and company of the Mechanics' Banking Association. Gentlemen : I will give you a bond and mortgage for $50,000 with interest at the rate of six per cent. per annum payable yearly, such as the comptroller will receive from you and take for the same $50,000 of Maine 5 per cent. stock at par. Said amount by Samuel A. Willoughby as agreed by him this day.

" PARKER & Co."

The answer also averred that the complainant became an original subscriber to the stock of the Mechanics' Banking Association for four hundred shares at twenty-five dollars per share, its par value, amounting, in the whole, to ten thousand dollars. That it was agreed between the complainant and the association that the payment for the said four hundred shares should be included in the bond and mortgage. The answer showed that the transaction was carried through as mentioned therein. Also that, when the negotiation was going on, the complainant represented to the defendant that he was about

1840.

COSTER
v.
CLARKE.

organizing a bank on his own account and wanted the Maine stock to deposit with the comptroller as security for circulating notes and as part of the capital of his contemplated bank, which was subsequently established by him and, as the defendant had been informed by the complainant, the said stock or a portion thereof was deposited with the said comptroller and circulating notes issued thereon—also that he had been informed by the latter that the said stock or the principal portion thereof was afterwards sold by him and that he received, in payment thereof at its par value, promissory notes, which he, the complainant, considered good.

Mr. *Lord*, in support of the motion to dissolve the injunction.

Mr. *Anthon*, for the complainant.

*Jan.* 18, 1841.

THE VICE-CHANCELLOR decided there was no usury here; and rested his decision upon the case of *The Bank of the United States* v. *Waggener*, 9 Peters, 378. His honor ordered the injunction to be dissolved; but left the costs of the motion to abide the event of the suit.