ZENAS S. CRANE, Respondent, *v.* RODERICK PRICE, impleaded, &c., Appellant.

The purchase by a party, with his own means and for his own benefit, of a demand held by another, though made at the request of the debtor, does not constitute a loan of money to the latter, within the intent of the usury laws.

Such a transaction is not vitiated by the agreement of the debtor, in order to induce such purchase, to secure by mortgage the amount actually due, though the transfer should be obtained at a discount.

It would be a perversion of the statute, to sustain a defense of usury, where no unlawful gain or advantage has been either bargained for or secured by the creditor, and where the debtor could be subjected to no loss by fulfilling the terms of his engagement.

APPEAL from the affirmance, by the Supreme Court, in the seventh judicial district, of a judgment in favor of the plaintiff for the foreclosure of a mortgage, executed to Stephen K. Williams on the 1st of April, 1853, to secure the payment of $7,000, and interest, and assigned by Mr. Williams to the plaintiff on the 1st of July, 1853.

The defendant alleged that the mortgage was executed to Mr. Williams, who was the attorney and agent of the plaintiff, for the benefit of the latter, who resided in the State of New Jersey, and that $3,500 of the amount so secured was a balance unpaid on a previous mortgage, executed by him to the plaintiff on the 27th of May, 1843, to secure the payment of $10,500. He alleged that the mortgage of 1843 was executed on a usurious agreement, and claimed that the subsequent mortgage was void, as half the amount secured represented an unpaid balance on the previous security.

The cause was tried before J. D. Husband, Esq., as referee, who found against the defendant, and directed judgment of foreclosure for the amount due, which was $6,683.70.

The referee found, substantially, the following facts, on the questions litigated upon the hearing:

Of the $7,000 secured in the mortgage of 1853, $3,000 was an unpaid balance of principal due on the previous mortgage of 1843, and $176.75 the arrears of interest thereon. The facts in relation to that mortgage were as follows:

In 1842 the defendant, Price, owned a large amount of real estate in Wayne county, New York, being a resident of that county. A balance was due from him to Cornelius Cuyler and Eleazer Burnham, on a mortgage upon a portion of such real estate. There was a balance due from him on a contract for the purchase of land at Geneva. By far the larger proportion of his indebtedness was to creditors in the city of New York, who had perfected judgments and issued executions to the sheriff of Wayne. In the fall of 1842, Price made an effort to relieve himself from embarrassment, by obtaining aid from his largest creditors in the city of New York. This attempt failed. His property was in hazard, and he was seeking means to extricate himself. In January, 1843, he formed the acquaintance of Mr. Joseph Law, of the city of New York, by whom he was introduced to the plaintiff, who resided near Newark, New Jersey. Price, thereupon, applied to Crane for a loan of $10,000, to meet his pressing liabilities. Crane had only some $6,000 or $7,000 at his command, in cash, and so informed Price. The latter, on consultation with his creditors at New York, found that this sum would not relieve his necessities. Crane could not raise more, except by a sale of his stocks in banks at Newark, New Jersey, which he considered as good as par to him — which had cost him more than their par value, and were a permanent investment, and so he informed the defendant, Price. He also informed him that these stocks were then depreciated in the market, but that he would not sell them below par for the reasons above stated. As matter of fact, the stocks were at that time so depreciated, by reason of a pecuniary pressure, from five to ten per cent below their nominal value. Price again saw his creditors, and thought they would take these stocks at par. It was, thereupon, agreed, between the parties, at Price's request, that Crane should come to Wayne county, a distance of some 350 miles from his residence, and examine the title to the real estate, and the value of the security Price could give him; and that if he should be satisfied in these particulars, *and the creditors of Price would take the bank stocks at par, in satisfaction as*

*to them of their judgments, the plaintiff would purchase these judgments,* partly by money and partly by bank stocks, as he could agree with the creditors, and take assignments of them, and that Price should then give him security on his Wayne county property for the amount of the judgments so purchased. In pursuance of this arrangement, the parties came together to Wayne county, in January, 1843. The plaintiff devoted about two weeks to the examination of the lands, the titles, and the other matters connected therewith. Price paid the expenses of that journey. During his visit at that time, the plaintiff accompanied the defendant to Aurora, and to Geneva. At Aurora the plaintiff, at Price's request, purchased and took an assignment of the Cuyler mortgage, paying the sum of $1,029.17, the amount unpaid and past due thereon. He, also, at like request, on the 31st day of January, 1843, paid the amount remaining unpaid and past due on the land contract, and took a new contract to himself. The amount thus paid was $833.80. On the first day of February, 1843, the plaintiff made a written agreement with the defendant, in which, after reciting his intention to loan Price $10,000, and that the sum paid for the land contract was an advance upon it, he agreed that, if anything should prevent the balance of this loan, he would reconvey to Price, on request, at any time in six months, on payment of the amount so advanced, with interest. On his return, Crane made efforts to settle with the New York creditors, by sale of his stocks, and the payment of money for these judgments. During these negotiations, and on the 23d day of February, 1843, he wrote a letter to Price, in which he referred to his efforts, and the obstacles in the way of getting the judgments, without paying their full amount in money. He stated that Mr. Hart required an indemnity from Price that the stocks should bring par within ninety days, and Bradner & Morgan required a similar undertaking, allowing six months for the sale of the stocks. He declared himself at a loss what to advise; suggested that, perhaps, Hart's claim might, in some way, be resisted or delayed; and closed his letter by saying, "I would barely suggest the propriety of your inclosing an obligation

to me for Bradner & Morgan, and also one for Hart, as before spoken of, if you think best to settle with Hart that way." Price sent to him, on the 6th of March, 1843, the undertakings suggested by the letter, which, however, were never used or delivered. Crane procured assignments of the judgments to himself, by the sale of his stocks, and by paying his moneys to the creditors, without the use of these undertakings.

*As matter of fact, it was no part of any agreement between Crane and Price that the latter was to do any act or incur any liability, to make the stocks available at their nominal value.* It was always a condition of the negotiation between the parties that the creditors were to take bank stocks for their judgments, but not that Price should in any way hazard a personal responsibility in respect to them. After Crane had purchased the judgments he made a second visit to Wayne county. This visit was made at his own expense. He received from Price no compensation for his services.

A written statement of the sums paid by Crane for the mortgage and the land contract, and the amount of the judgments, and some expenses for sheriff's fees, was exhibited to Price, and for the aggregate of those sums, and no more, the $10,500 mortgage was executed by Price. On taking that mortgage, Crane acknowledged satisfaction of the judgments; and the mortgage to Cuyler & Burnham, and the land contract, were disposed of for the benefit of Price. The terms of the mortgage were not agreed on till the parties met, after the plaintiff's purchase of the judgments, and then it was agreed between them that the judgments, and the advances aforesaid, should form the consideration of said mortgage. I find that such was the consideration of said mortgage.

The stocks, though depreciated in value in the market, were not to be furnished by the plaintiff unless they could be sold to Price's New York creditors at their full nominal value, on account of their judgments, on which payment Crane was authorized to take an assignment thereof to himself, *as purchaser. It was a fair sale of stocks at par, for the benefit and accommodation of Price, and at his request.*

The effect of the transaction was to furnish a market for stocks at par, for the mutual benefit of the parties, if the plaintiff had desired to part with his stocks, which does not distinctly appear, but if he did not, then for the exclusive benefit of Price. *The transaction was a fair and honest one on the part of the plaintiff, and was not an attempt to cover or disguise a usurious contract.*

Upon these facts the referee held that the defense of usury failed, and that the plaintiff was entitled to judgment.

Seven years ago the judgment was affirmed, on appeal to the General Term.

*Alexander S. Johnson,* for the appellant.

*Stephen K. Williams,* for the respondent.

PORTER, J.   The mortgage which the defendant seeks to impeach was for the payment of an antecedent debt.   It was given to secure the precise sum legally due to the plaintiff. It represented the amount of certain outstanding demands, which he had purchased with his own means, and for his own benefit, from the creditors by whom they were previously held.   His legal rights were in no manner impaired by the circumstance that he did this at the request of the defendant, and for the purpose of averting a forced sale of his property.

It is a misnomer, to speak of the transfer of a demand by one creditor to another, as a loan of money to the debtor, within the intent of the usury laws.   It is true that the defendant originally applied for a loan of $10,000, but the application was declined by the plaintiff, who had not that amount at his command.   He had only about $7,000, and this he was willing to lend; but his other means were in stocks of the Newark banks, which were purchased above par, and were worth more than they cost, and which he held as a permanent investment.   He objected to selling these, as in the depressed condition of the money market at that time, they could not be converted into cash except at a depreciation of from five to ten per cent.   The defendant assured

him that his creditors would take these stocks at par, and induced him to agree, on that condition, to purchase their claims, and to accept a mortgage for the amount, if on examination he was satisfied with the proposed security. The creditors refused to accede to these terms, and the agreement, therefore, never became operative. If it had been carried into effect it would have been perfectly lawful, and a mortgage for the amount of the debts so purchased would have been a valid and binding obligation. (*Vroom* v. *Ditmas*, 4 Paige, 526, 532; *Willoughby* v. *Comstock*, 3 Edw., 424; *United States Bank* v. *Waggener*, 9 Pet., 378, 400.)

On the failure of the proposed arrangement, the plaintiff did not relinquish his purpose to aid the defendant. He devoted several weeks to the business, and made long and distant journeys, without reimbursement, except in a single instance, even of·his traveling expenses. He purchased and took assignments of the outstanding claims, making up, by the discount on some of the purchases, for loss on others by the transfer of his stocks at less than par. He accepted a mortgage for the precise amount due from the defendant, payable five years from date with annual interest. Some ten years afterward, the defendant induced him to accept a substituted mortgage, embracing the unpaid balance due on the first, with a debt subsequently contracted of nearly $4,000; and when the latter came to be foreclosed the present defense was interposed. Its purpose has probably been accomplished in delaying for ten years the collection of a just debt. The referee finds, as matter of fact, that in none of these transactions was there any usurious intent, agreement or exaction. It would be a gross perversion of the statute to sustain a defense of usury, where no unlawful gain or advantage is either bargained for or secured by the creditor, and where no loss can be entailed on the debtor by fulfilling the terms of his engagement. The law applicable to the facts is clear. The defense is without merit, and the judgment should be affirmed with damages for delay.

All the judges concurring,

Judgment accordingly.