AMERICAN CENTURY MORTGAGE
INVESTORS and Dan M. Cain,
Substitute Trustee, Appellants,

v.

REGIONAL CENTER, LTD., Appellees.

No. 18703.

Court of Civil Appeals of Texas,
Dallas.

Oct. 2, 1975.

Rehearing Denied Oct. 22, 1975.

**580**

Mark T. Davenport, Atwell, Cain & Davenport, Dallas, for appellants.

Christopher M. Weil, Weil, Craig & Fischman, Dallas, for appellees.

GUITTARD, Justice.

■ This appeal is from a temporary injunction restraining a trustee's foreclosure sale under a deed of trust. The principal ground alleged for injunctive relief is that the loan secured by the deed of trust was usurious because the note provided for interest at a rate permitted only for a corporate borrower, and that the actual borrower was not the corporation which had signed the note and deed of trust but was a limited partnership for whose benefit the corporation was acting.[1] We reverse the trial court's order and dissolve the temporary injunction because we hold that no probable right of recovery was shown by the evidence at the temporary injunction hearing. More specifically, we hold that there is no evidence to support an implied finding by the trial court that the lender knew that the arrangement was a subterfuge to cloak a usurious transaction, and we hold also that in the absence of such knowledge, the transaction cannot be held usurious because of failure of the lender to go behind the loan documents and the legal record of the title and inquire whether the loan to the corporation was a subterfuge.

We consider first the evidence bearing on the issue of whether the lender knew that the corporation was not the actual borrower. The facts on this point are without serious dispute. The moving party behind the transaction was Frank Campbell, an experienced real estate broker engaged in the business of promoting and managing joint ventures in real estate. He was president of the ostensible borrower, Investment Real Estate Company, Inc., a corporation organized in 1970 and used by him in his business. There is no contention that In-

---

1. Tex.Rev.Civ.Stat.Ann. art. 5069–1.02 (Vernon 1971) provides in part as follows:
   Except as otherwise fixed by law, the maximum rate of interest shall be ten percent per annum. A greater rate of interest than ten percent per annum unless otherwise authorized by law shall be deemed usurious.
   One of the exceptions to the ten-percent maximum is found in Tex.Rev.Civ.Stat.Ann. art. 1302–2.09 (Vernon Supp.1974) as follows:
   Notwithstanding any other provision of law, corporations, domestic or foreign, may agree to and stipulate for any rate of interest as such corporation may determine, not to exceed one and one-half percent (1½%) per month, on any bond, note, debt, contract or other obligation of such corporation under which the original principal amount is Five Thousand Dollars ($5,000) or more  .  .  .  and in such instances, the claim or defense of usury by such corporation, its successors, guarantors, assigns or anyone on its behalf is prohibited  .  .  ..

vestment Real Estate Company was not at all relevant times a legitimate, functioning corporation.

In November 1971, Campbell acquired the right to purchase approximately twenty-seven acres of undeveloped land adjacent to Carpenter Freeway in Irving, Texas. Several days later he agreed in writing to contribute his rights in this land to a joint venture consisting of himself and several other investors. In accordance with this agreement, he took title to the land in January 1972 in the name of "Frank C. Campbell, Trustee," and about the same time he and the joint venturers joined with additional investors in signing articles of limited partnership for an enterprise known as "Regional Center, Ltd.," of which Campbell and six others were general partners. Evidently the principal purpose of the limited partnership was the acquisition and development of the land in question.

The purchase money was originally borrowed from a bank on a one-year note. Subsequently, Campbell and other general partners of Regional Center, Ltd. sought financing for a longer period. They approached representatives of Wintex Mortgage Company concerning a loan, and on November 4, 1972, Wintex obtained a commitment from the present defendant, American Century Mortgage Investors, to lend two million dollars to Regional Center, Ltd. at a rate of four and one-half percent above the prime interest rate established from time to time by Chase Manhattan Bank of New York. The commitment letter further required a deed of trust on the twenty-seven acres of land and a continuing guaranty of the loan by several of the general partners of Regional Center, Ltd.

When the commitment letter of November 4 was received, Wintex advised Campbell that the lender would require a corporate borrower. After consulting with Campbell, Wintex wrote a letter to American Century requesting several changes from the original commitment. Among the changes requested were that the name of the borrower be Investment Real Estate Company, Inc., that the loan be reduced to one million eight hundred thousand dollars because part of the land had been sold, and that the deed of trust cover the remaining land, consisting of approximately twenty-five acres.

These modifications in the commitment were accepted by American Century, and the loan was closed at the office of Dallas Title Company in Irving on January 19, 1973. As a part of the closing transaction, Campbell as trustee signed a warranty deed conveying the land to Investment Real Estate Company, Inc. In his capacity as president of the corporation he also signed a promissory note for one million eight hundred thousand dollars payable to American Century with interest at the rate of four and one-half percent above the prime lending rate as established by Chase Manhattan Bank of New York. The interest was payable monthly and the entire principal balance was payable at the end of two years. Campbell also signed, on behalf of the corporation, a deed of trust in favor of Harlon P. Sisk, trustee, for the benefit of American Century. Several of the general partners of Regional Center, Ltd. signed a continuing guaranty of the corporate note. This guaranty expressly limited their liability for interest to a maximum of ten percent per annum.

About the same time the loan was closed, three other documents were executed but were not disclosed to any representatives of the lender. One was a corporate resolution of Investment Real Estate Company, Inc., authorizing the corporation to take title to the land from Frank Campbell, trustee, and also authorizing Campbell as president of the corporation to execute the note and deed of trust in question. This resolution further provided that the corporation would hold the title as trustee for Regional Center, Ltd., and authorized Campbell to execute a deed conveying the land to Regional Center, Ltd. The second document not disclosed to the lender was a deed signed by Campbell as president of the corporation

conveying the land to Regional Center, Ltd. in accordance with the resolution. The third was a letter to Gene Schutze, attorney for the corporation, instructing him to hold the deed in escrow and to file it for record in certain prescribed circumstances.

The evidence shows that the representatives of the borrower were careful not to disclose these three documents to any of the representatives of the lender or of the title company which insured the title of the borrowing corporation. This nondisclosure was explained at the temporary-injunction hearing by the corporation's attorney, Mr. Schutze, who testified that if these documents had been called to the attention of the title company, the loan could not have been closed. Also the lender's attorney, Mr. Poitevant, testified that if he had seen them at the time of the closing he would have "bounced off the ceiling."

The present suit was not brought by the corporate borrower but by the limited partnership, Regional Center, Ltd., alleging that it was the equitable owner of the land and that the loan was usurious because defendant American Century had contracted with the corporation and with plaintiff Regional Center, Ltd. for interest at a greater rate than that allowed by Texas law. Plaintiff further alleged that because of the "contrivances, devices, and artifices" of defendant American Century, plaintiff was unable to exercise its rights in the land, make payments, or discharge encumbrances on the land. The only reason specified to support the alleged inability to discharge encumbrances is "the impossibility of determination of exact amount, if any, due thereon, much less if any amount is due by reason of the aforesaid usurious transactions."

The order granting the temporary injunction does not specify the ground of probable right to restrain the trustee's sale. The principal contention of defendant American Century on this appeal is that plaintiff has failed to establish a probable right of recovery because it failed to plead and prove a prima facie case establishing that defendant contracted for or received interest in an amount greater than the amount authorized by law. We agree.

Plaintiff argues that a probable right of recovery for usury is established by evidence showing: (1) that Regional Center, Ltd. has always been the equitable owner of the land; (2) that it is not a corporation; (3) that it was at all times the borrower-beneficiary-obligor of the loan; (4) that American Century directed that the loan commitment be changed to the corporation; (5) that as between the corporation and the partnership, American Century "carefully sought no evidence of dominant purpose or essential relationship, knowing there was none;" and (6) that after the loan was made American Century "invoiced RCL, looked to the guarantors and ignored the unrelated paper signatory." This argument raises the question of whether the record contains circumstantial evidence sufficient to support an implied finding that representatives of the lender knew that the transaction was not actually a loan to the corporation but was rather a subterfuge to conceal a usurious loan to the partnership.

■ We find no evidence in the record to support such a finding. If we assume that the requirement of a corporate borrower was imposed by American Century, still, so far as this record shows, American Century may have expected a genuine corporate borrower to be substituted for the partnership. Such an expectation was apparently confirmed when American Century received a request for modification of the commitment with Investment Real Estate Company, Inc., a genuine corporation, as the borrower. The fact that the change from the partnership to the corporation as the borrower was made so as to permit a higher rate of interest does not in itself make the transaction usurious, since such a change is consistent with an intention to comply with the usury laws rather than to evade them, as this court recently concluded in *Skeen v. Glenn Justice Mortgage Co.*, 526 S.W.2d 252 (Tex.Civ.App.—Dallas 1975, writ pending). *See also Jenkins v. Moyse*, 254 N.Y. 319, 172 N.E. 521, 522 (1930).

■ The fact that the monthly statements of interest were addressed to the partnership rather than the corporation adds nothing. The evidence shows that Campbell requested the statements to be addressed in this manner after the loan was closed. We do not see how a subsequent request to the lender to address the statements in a particular manner could have any bearing on the legality of the loan. Neither do we see how the lender's efforts, if any, to exercise its rights under the guaranty agreement could bear on the question of whether the lender knew that the corporation was not the true borrower.

■ Plaintiff's principal contention appears to be that if the representatives of the lender had used ordinary care to investigate the circumstances of the loan, they would have discovered that the loan to the corporation was a sham because the partnership was the real borrower. We do not agree that the lender's failure to investigate can make a transaction usurious that is not so on its face. Usury is a matter of intention. Unless the loan papers show on their face an intention to charge interest at a greater rate than permitted by law, the burden is on the party pleading usury to show the existence of some agreement, device, or subterfuge to charge usury and that both parties had that purpose in contemplation. *Griffin v. Stewart,* 348 S.W.2d 800, 803 (Tex.Civ.App.—Amarillo 1961, no writ); *Shipman v. Wright,* 3 S.W.2d 519, 521 (Tex. Civ.App.—Dallas 1928, writ ref'd) and *see Mays v. Pierce,* 154 Tex. 489, 281 S.W.2d 79, 82 (1955). Even though the borrower intended to pay more interest than permitted by law, the transaction is not usurious unless the lender also supposed and intended it to be so. *Abilene Christian College v. Wright,* 1 S.W.2d 720, 723 (Tex.Civ.App.— El Paso 1927, writ ref'd). Failure of the lender to make an investigation which might have disclosed facts establishing payments in excess of legally permitted interest is not equivalent to an intention to charge usury.

■ Neither can we accept plaintiff's contention that the lender's neglect to require the usual resolution authorizing the officers of the corporation to borrow the money amounted to such a participation in the subterfuge as to render the transaction usurious. Plaintiff argues that if such a resolution had been demanded and the corporation had produced the resolution which actually authorized the loan, the lender would have discovered from the recitations and other provisions of the resolution that title to the land was held for the benefit of the partnership and that an immediate conveyance from the corporation to the partnership was authorized. This argument rests on speculation. It is just as reasonable to suppose that if the lender had demanded an authorizing resolution, the corporation would have furnished something other than the resolution disclosing the partnership's interest in view of Mr. Schutze's testimony that the loan could not have been closed if this resolution and the other documents had been called to the attention of the title company.

■ Plaintiff's own evidence indicates an intention by the partnership to practice deception upon the lender. Before the closing Campbell was admittedly an agent of the partnership and was holding title to the land as trustee for its benefit. He executed a warranty deed to the corporation and then signed a note and deed of trust on behalf of the corporation. These documents were solemn representations that the corporation was the true owner of the land and was actually borrowing the money. Other documents which would have revealed the partnership's interest were deliberately concealed. Under these circumstances the partnership, whose agent participated in the transaction, is in no position to assert that the lender should have made its own investigation to determine whether the transaction was genuine. If a deceived party is penalized for failure to investigate, deception will often be rewarded. Accordingly, one who makes a representation on which another relies will not

be heard to say that his own representation was not worthy of belief and should not have been accepted without investigation. *Isenhower v. Bell*, 365 S.W.2d 354, 357 (Tex. 1963); *Southern States Life Insurance Co. v. Newlon*, 398 S.W.2d 622, 626 (Tex.Civ. App.—Eastland 1966, writ ref'd n. r. e.). On the same reasoning we hold that a borrower cannot assert a subterfuge of its own making to establish usury without proof that the lender participated in or had actual knowledge of the subterfuge.

■ Plaintiff also argues that it made a prima facie showing of usury by evidence that the rate of interest provided in the note, namely four and one-half percent above the prime rate established by the Chase Manhattan Bank, was more than ten percent per annum, and that the burden then shifted to the lender to establish that the loan came within the exception permitted for corporate borrowers by Tex.Rev.Civ. Stat.Ann. art. 1302–2.09 (Vernon Supp. 1974). Plaintiff insists that since the note provided for interest of more than ten percent, defendant, in order to bring the loan within the exception, had the burden to show that the loan was a genuine corporate transaction. No authority is cited in support of this contention, and we are unable to find any. We conclude that the case falls within the rule, announced in *Griffin v. Stewart, supra,* and other authorities above cited, that the burden is on the party pleading usury to establish that a transaction which appears legal on its face is in fact a subterfuge to cloak usury. Plaintiff has failed to discharge that burden. Consequently, the trial court's order cannot be sustained on the ground that the loan was usurious.[2]

■ Plaintiff also contends that the temporary injunction was properly issued because, apart from the usury question, the amount of principal and interest which it was required to pay to avoid the foreclosure was uncertain, citing such cases as *Lee v. Howard Broadcasting Corp.*, 305 S.W.2d 629 (Tex.Civ.App.—Houston 1957, no writ) and *Hiller v. Prosper Tex, Inc.*, 437 S.W.2d 412 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ). We have difficulty following this argument because plaintiff argues this uncertainty only in general terms and does not explain the nature or ground of the alleged uncertainty, if based on grounds other than usury. Apparently the prime rate established by the Chase Manhattan Bank was easily ascertainable. The lender sent monthly statements of the amount of interest due, and the accuracy of these figures is not challenged. Thus no uncertainty in the amount of interest payable has been shown.

■ Plaintiff suggests that the amount payable by the guarantors was uncertain, but does not explain why. The guarantors are not parties here, and even if they should tender the full amount guaranteed by them, such a tender would not prevent the trustee's sale unless the full amount of principal and interest owed by the corporation were tendered. Consequently, any uncertainty in the amount owed by the guarantors would not provide grounds for restraining the trustee's sale.

■ Plaintiff argues further that it was entitled to restrain the trustee's sale until it could obtain an adjudication of its equitable title to the land. This argument is without merit because plaintiff has no standing to assert an equitable title as against the lender who relied on the legal title unless the evidence shows that the lender had actual

---

**2.** Plaintiff suggests that the loan was usurious even to a corporate lender because "four and one-half percent over prime" could conceivably amount to more than the one and one-half percent per month permitted by article 1302–2.09. We note, however, that the parties have specifically excluded the possibility that the rate might go above the statutory maximum by the following language: "In no event, however, shall any interest payable under this Note, regardless of how said interest may be defined or computed, ever exceed the maximum rate permitted under the laws of the State of Texas."

or constructive notice of its claim. *Richardson v. Levi*, 67 Tex. 359, 3 S.W. 444 (1887). We have already demonstrated that this record fails to show that the lender had any such notice.

For the reasons stated, the order granting the temporary injunction is reversed and the temporary injunction is dissolved.