**Macile MILLER, Individually and as executrix of the Estate of O. W. Miller, Appellant,**

v.

**FIRST STATE BANK, Bedford, Texas, Appellee.**

No. 17773.

Court of Civil Appeals of Texas, Fort Worth.

April 15, 1977.

Rehearing Denied May 26, 1977.

Staples & Foster, Ross T. Foster, Hurst, for appellant.

Hooper, Kerry, Chappell & Broiles, R. David Broiles, Fort Worth, for appellee.

OPINION

SPURLOCK, Justice.

First State Bank's motion for rehearing is granted; we withdraw our original opinion and substitute this one in its place.

This is a usury case. O. W. Miller and Macile Miller, a husband and wife, acting through their broker, made a contract with the Bank. The contract provided the Millers sign a note for $70,000.00 due three years from date, with interest at the rate of 10% per annum. Pursuant to the contract, the Bank deposited $70,000.00 in the borrowers' non-interest bearing joint checking account· but also in accordance with the agreement, the borrowers had the use of only $56,000.00. The other $14,000.00 was frozen, to guarantee payment of interest during the first two years. The borrowers paid $70,000.00 and then brought suit to recover double the usurious interest charged and contracted for and other relief.

The Bank filed a counterclaim for $14,-000.00 interest. After a non-jury trial, the court rendered judgment for the Bank. The borrowers have appealed.

Affirmed in part, reversed and rendered in part.

The facts of the case are undisputed. In the latter part of 1971, O. W. and Macile Miller were selling a tract of land they owned in Tarrant County and buying one in Johnson County. Andy Winters, a broker acting as their agent, was arranging the financing for the Millers. The Millers' property was sold for $228,800.00 to Alan I. Jones, Trustee. As part of the consideration, the purchaser executed a note for $219,800.00 payable to the Millers. Interest for the first two years was paid in advance. Blease Tibbets, president and a member of the board of directors of the First State Bank of Bedford, (the name of the Bank has been changed), the appellee Bank, was made trustee in the deed of trust executed to secure payment of the note.

As part of the transaction the Bank, acting through Tibbets, agreed through their agent, Winters, to lend the Millers $70,-000.00 so they could purchase the tract in Johnson County and pay the balance due on the land being sold. The Bank refused to make the loan unless interest at 10% was paid annually or some similar arrangement was agreed to. In order to meet the Bank's requirements the $219,800.00 note and lien securing it were assigned to the Bank. In addition, Ryan Mortgage Company, on January 4, 1972, gave the Bank a "take-out" letter, by which Ryan Mortgage agreed to pay the Bank any unpaid balance owed by the Millers on this note, not to exceed $70,-000.00. This commitment was valid for a period of three years from date, but Ryan Mortgage would not be called upon to fund prior to January 5, 1975.

As a further part of the transaction the Millers, acting through their agent, agreed to give the Bank two post-dated checks in the amount of $7,000.00 each, dated January 4, 1973, and January 4, 1974, respectively.

In accordance with this oral agreement the Millers signed a note for $70,000.00 dated January 6, 1972, assigned the $219,800.00 note and lien to the Bank, delivered the take-out letter and the two post-dated checks drawn on their joint account with appellee Bank, dated January 4, 1973, and January 4, 1974, respectively, to the Bank. The deposit of $70,000.00 was made on January 7, 1972, to the Millers' joint checking account in the Bank. The Johnson County sale was closed on that same date. The Bank then prepared a letter dated January 14, 1972, reducing to writing the agreement already entered into which follows:

"January 14, 1972

"First State Bank

P. O. Box 699

Euless, Texas

"Gentlemen:

"I hand you herewith two checks signed by me on my account # 160–202–8. Each check is in the amount of $7,000.00, one is dated January 4, 1973 and one January 4, 1974. These checks represent interest which will be due your bank on the above date on my note with your bank in the amount of $70,000.00 dated January 6, 1972.

"This will be your authority to hold amounts sufficient to cover these checks and put a freeze on my account # 160–202–8 to accomplish same.

"Sincerely,

"Otis W. Miller"

The first interest check dated January 4, 1973, was paid out of this "frozen" account. On March 3, 1973, before the next check was payable, O. W. Miller died. Application to probate his will was filed on March 13, 1973. His widow, Macile Miller, qualified as independent executrix of his estate on March 27, 1973. She then brought this suit individually and in her representative capacity against the Bank alleging usury, among other things.

In the interest of brevity, we refer to Mrs. Miller and the estate of O. W. Miller collectively as plaintiffs or counter defendants, except where the two parties' interests require separate treatment.

On or about February 17, 1975, plaintiffs, the Bank, and Ryan Mortgage entered into a written agreement in which Ryan Mortgage honored its "take-out" agreement and lent $70,000.00 to Macile Miller in both capacities, which she was to pay to the Bank. In addition, she agreed to pay $7,000.00 into the registry of the court in this cause of action she had filed against the Bank for usury (the case now before us), all without prejudice to the rights of the parties in this cause of action. She complied with all terms of the agreement. The $7,000.00 remains in the registry of the trial court, and the other $7,000.00 remains in the "frozen" account of the Millers at the Bank.

The Bank comingled the $14,000.00 in the frozen account with its own funds and has loaned all or portions of it to other customers at interest as if it were its own funds.

On appeal, plaintiffs assert the loan transaction was usurious because the contract and agreement between the parties had the effect of giving the Millers the "use of" only $56,000.00 while the Millers were required to pay the Bank $77,000.00 at the end of three years for this privilege.

In the trial court, the Bank, by way of defense, denied that the transaction was usurious because (1) the Millers had the use of the $70,000.00 because the Bank had deposited this amount in the Millers' account, (2) the checks were post-dated for interest to be paid only on the anniversary date, (3) the account was a "special account," title to the $14,000.00 remaining in the borrowers, (4) the Millers are estopped to claim usury because the final plan to freeze the account was proposed by Mr. and Mrs. Miller's broker and attorneys, and (5) after the freeze agreement was made, the Bank never refused to allow the Millers to withdraw the money. The Bank contends it is not liable for the further reason that even if the loan is usurious, Texas Usury Law provides for a penalty only for the payment of double the interest *received* and not for double the amount *charged* or *contracted for.* The Bank contends it has received only $7,000.00 interest payment.

The Bank filed a counterclaim against the plaintiffs for $14,000.00 interest, alleging the $7,000.00 check dated January 4, 1974, was not cashed because Miller died more than ten days before January 4, 1974, and, therefore, the check is not good under Tex.Bus & Comm. Code Ann. § 4.405 (1968). Plaintiffs answered under oath that they do not owe this sum of $14,000.00 because it represents a charge for interest that is usurious.

It is not necessary for the disposition of this case for this court to construe and reconcile the provisions of Tex.Rev.Civ.Stat. Ann., Banks and Banking, art. 342–705, Adverse Claims to Deposits and art. 342–706 (1973) Joint Deposits; with Tex.Bus. & Comm. Code Ann. § 4.405 (1968) Death . . . of Customer.

The court, sitting without a jury, rendered judgment that plaintiffs recover nothing; that the Bank recover from them the amount of $14,000.00, together with accrued interest; that the clerk of the district court pay to the Bank $7,000.00; and that the Bank recover the $7,000.00 remaining in the frozen account.

The statutes involved are Tex.Rev.Civ. Stat.Ann. art. 5069 §§ 1.01, 1.02, 1.04, 1.06 and 8.04 (1971), portions of which are quoted below:

1.01. "Definitions

"(a) 'Interest' is the compensation allowed by law for the use or forbearance or detention of money . . . .

". . . . .

"(d) 'Usury' is interest in excess of the amount allowed by law."

1.02. "Maximum rates of interest

"Except as otherwise fixed by law, the maximum rate of interest shall be ten percent per annum. A greater rate of interest than ten percent per annum unless otherwise authorized by law shall be deemed usurious. All contracts for usury *are contrary to public policy* and shall be subject to the appropriate penalties prescribed in Article 1.06 of this Subtitle." (Emphasis ours.)

1.04. "Limit on rate

"The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten percent per annum on the amount of the contract; and all other written contracts whatsoever, except those otherwise authorized by law, which may in any way, *directly or indirectly,* provide for a greater rate of interest shall be subject to the appropriate penalties prescribed in this Subtitle." (Emphasis ours.)

1.06. "Penalties

"(1) Any person who *contracts for, charges or* receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest *contracted for, charged or* received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error." (Emphasis ours.)

Article 5069—1.01 et seq. was effective October 1, 1967. Article 5069—50.03 repealed the earlier provision (Tex.Laws 1963, Ch. 205, § 28 at 569) which allowed a person or his legal representative to recover double the amount of usurious interest *received.*

The Tex.Const. art. XVI, § 11, in the absence of legislation fixing maximum rates of interest, provides in pertinent part, "All contracts for a greater rate of interest than ten percentum per annum, shall be deemed usurious   .   .   .."

The legislature has provided rules to aid the courts in the construction of its statutes, which follow:

Tex.Rev.Civ.Stat.Ann. art. 10 (1969) General Rules.

"The following rules shall govern in the construction of all civil statutory enactments:

"   .     .     .     .

"6. In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy.

"   .     .     .     .

"8. The rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes; but the said statutes shall constitute the law of this State respecting the subjects to which they relate; and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice."

■ The usury statute is penal in nature. In addition to the imposition of civil penalties, it provides for criminal penalties. Tex. Rev.Civ.Stat.Ann. art. 5069—1.06(2) and 8.02 (1971).

Tex.Penal Code Ann. § 1.05 (1974)—Construction of Code—provides:

"(a) The rule that a penal statute is to be strictly construed does not apply to this code. The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code.

"(b) Unless a different construction is required by the context, Sections 2.01, 2.02, 2.04, 2.05, and 3.01 through 3.12 of the Code Construction Act (Article 5429b —2, Vernon's Texas Civil Statutes) apply to the construction of this code."

■ The Bank correctly points out the presumption that the parties intended to observe and obey the usury laws. *Hernandez v. United States Finance Company,* 441 S.W.2d 859 (Tex.Civ.App. Waco 1969, writ dism'd).

■ The plaintiffs correctly point out that in determining whether a loan transaction is usurious, the form is disregarded and the substance is investigated. *Schmid v. City Nat. Bank of Wichita Falls,* 132 Tex. 115, 114 S.W.2d 854 (1938).

■ The supreme court has held that under Tex.Rev.Civ.Stat.Ann. art. 5069—1.-06(1) (1971), the statutory penalty is twice the amount of usurious interest *contracted for, charged or* received. The usury penalties provided for in the statute are available to the borrower either as an offset in an action on a note or as an affirmative action to recover a penalty. A usurious contract is

*unenforceable* as to the interest *contracted for, charged or* received. *Wall v. East Texas Teachers Credit Union,* 533 S.W.2d 918 (Tex.1976).

All of the material testimony was elicited from Blease Tibbets, president and member of the board of directors of appellee Bank. His uncontradicted testimony established that the oral agreement to leave $14,000.00 in the account, which account would then be frozen, was made by Winters, acting as agent for both Mr. and Mrs. Miller, before the account was funded. The Millers had been customers of the Bank for approximately ten years at the time the negotiations occurred. The account was funded on Friday, January 7, 1972. There is no evidence to indicate the Millers knew when the freeze would be placed on the account. It was placed on the account on either January 7, 1972, or January 12, 1972, with no other authority in addition to the oral agreement of January 6, 1972. The written authority came later, on January 14, 1972, when Tibbets' secretary drafted a letter for O. W. Miller's signature, authorizing the freeze. At that time, there were delivered to the Bank the post-dated checks along with the signed letter. The record is devoid of any evidence of consideration for these latest acts other than the loan itself, and Tibbets himself testified that without that promise, or some other arrangement that would secure payment of interest annually, he would not have agreed to the loan. Tibbets was not clear as to whether the freeze was placed on the account on January 7, the day the account was funded, or on January 12, the day the freeze first appears in the Bank's records. In either case, it occurred before January 14, the day it was authorized in writing.

It is clear that formalities of the transaction were not carefully observed, the agreement between the Bank and its longtime customers having already been made. The January 14, 1972, letter simply reduced to writing what had already taken place. The Bank contends that, theoretically, it was possible for the Millers to remove the $14,000.00 from the account at any time between Friday and the following Wednesday. Such a withdrawal of funds by the Millers would have been a breach of their oral contract with the Bank. It is unlikely that a check of that size would have been paid without its having been "flagged" by some Bank official such as Tibbets, as it was on another check on that same account dated January 7, 1972, payable to a title company in the amount of $49,389.76, in connection with the Johnson County land transaction and which check bears Tibbets' initial authorizing payment. The understanding of all parties was that the Millers would never control that fund at any time. The possibility the Millers could have avoided their oral contract with the Bank by withdrawing funds from their account between the date of the funding and the date the freeze order appeared on the Bank records, a matter of a few days, does not alter the substance of the transaction.

The Bank urges the $14,000.00 constituted a special account and was, therefore, not the same as interest paid in advance, since title remained in the Millers.

It cites a number of cases for the proposition that when a Bank is directed by a depositor to apply funds in a special way, a special account comes into existence such that title to the funds remains in the depositor, and the Bank's only function is to apply the funds pursuant to the depositor's instructions. Its reliance is not well placed. In most of those cases, special accounts are not in issue. In only two cases among those cited had funds been deposited for a special purpose. In one, *Martin v. First State Bank, Memphis,* 490 S.W.2d 208, 211 (Tex. Civ.App., Amarillo 1973, no writ), the court defined both general and special deposits as follows: "When money or its equivalent is deposited in a bank without any special agreement, the law implies that it is to be mingled with the other funds of the bank, the relation of debtor and creditor is created between the bank and the depositor, and the deposit is recognized as a *general* deposit. (Citations omitted) . . . On the other hand a deposit made for some special application or disposition is a *special* deposit

and when a bank knowingly accepts a deposit for a specific purpose, it cannot thereafter divert it for its own benefit or otherwise act to defeat the purpose for which the deposit was made. (Citations omitted)." The other case has been reversed, the supreme court finding no special deposit. *Hill v. Citizens National Bank of Dallas,* 495 S.W.2d 615 (Tex.Civ.App., Tyler 1973), *rev'd* 505 S.W.2d 246 (Tex.1974).

In the instant case, the only liability the Bank could possibly have incurred is to itself, since the "special purpose" was to pay itself. However, the Bank used the funds as if it already owned them. It considered them as part of its general funds and loaned them, at least in part. The difference, once again, is one of form and not of substance.

■ The principal amount of the loan being $70,000.00, of which the borrowers were required to leave $14,000.00 in the Bank, then reduces the amount actually loaned, and the principal upon which the Bank was authorized to charge interest, to $56,000.00. *Schmid v. City Nat. Bank of Wichita Falls,* supra.

The Bank next contends that prepayment of interest does not violate the usury statute. It asserts that in Texas the rule is firmly established that interest may be retained in advance at the maximum legal rate for one year. *Bothwell v. Farmers' & Merchants' State Bank & T. Co.,* 120 Tex. 1, 30 S.W.2d 289 (1930); *Nevels v. Harris,* 129 Tex. 190, 102 S.W.2d 1046 (1937); *Finn v. Alexander,* 165 S.W.2d 500 (Tex.Civ.App., El Paso 1941, no writ). It then argues that there is no reason to believe that retained interest two years in advance would render this three-year loan usurious.

Our analysis of the opinion in the *Bothwell* case, supra, illustrates the fallacy of the Bank's contention. In that case the supreme court stated that "Most text-writers and many judicial opinions have pointed out how devoid of logic is the rule which sanctions the collection in advance of interest at the highest conventional statutory rate, on even short-term loans, under statutes against usury."

The supreme court then traces the history of the practice of requiring interest to be paid in advance on short-term loans, citing the custom of the law merchant. That court reaches the conclusion that interest paid in advance at the legal maximum rate or less on short-term commercial paper is not usurious. It then defines short-term commercial paper as being notes for a term of one year or less· its holding follows: "In Texas the rule sanctioning the reservation of interest in advance at the highest conventional rate for a year or less is too firmly established to be departed from."

■ This court overrules the Bank's contention. We refuse to extend the time period involved beyond that announced by the supreme court in the *Bothwell* case, supra. To do otherwise, we would reach an absurd result because the permissible time period could be extended to thirty years or more and the lender could, without violating the usury statute, deduct all the interest that would be paid on a 30-year loan at 10% per annum interest in advance and then loan such prepaid interest to other borrowers under the same arrangement at 10% per annum interest and thus pyramid the interest earned.

The Bank next contends that if the $14,000.00 interest payment is spread over the life of the loan, then no interest in excess of 10% was contracted for or charged.

Pierre R. Loiseaux, then Baker and Botts Professor of Law, University of Texas School of Law, Austin, Texas, is the author of a very lucid article entitled "Some Usury Problems in Commercial Lending." 49 Texas L.Rev. 419 (1971). In that article he stated at page 426: "The lenders argued that the courts should look at the entire period of the loan in determining the question of usury. Texas courts refused to do so because the statute says ten percent *per annum*; if the borrower in any one year pays a rate of interest greater than the legal maximum, the statute is violated." Citing *Commerce Trust Co. v. Best,* 124 Tex. 583, 589–90; 80 S.W.2d 942, 946 (1935); *Dallas Trust & Sav. Bank v. Brashear,* 65

S.W.2d 288, 292 (Tex.Com.App.1933, jdgmt adopted). He further makes the observation at page 429 as follows: "If a lender were to offer to lend one hundred dollars at six percent simple interest on the condition that the borrower deposit fifty dollars with the lender for the period of the loan, it would be apparent to most that the lender really was lending fifty dollars at twelve percent. No case testing this device has been found. Can variations of this scheme be used to increase the lender's yield?"

■ It is our opinion that absent a savings clause in a loan agreement requiring what would have otherwise been usurious interest charged in any one year to be spread over the term of the loan, the prepayment of interest in excess of 10% per annum in any one year is a violation of the usury statute. *Commerce Trust Co. v. Best,* supra.

■ We are of the opinion that if the prepayment does not result in more than 10% interest *per annum* contracted for, charged, or received in any one year, or if there is a savings clause in the loan agreement which requires any otherwise usurious interest to be spread, then, of course, usury has not resulted. *Imperial Corp. of America v. Frenchman's Creek Corp.,* 453 F.2d 1338 (5th Cir. 1972); *Nevels v. Harris,* supra.

In the instant case the Bank charged and contracted for the prepayment of interest that resulted in a charge of interest in excess of 10% per annum in one year of its term. The loan agreement did not provide for the spreading of the interest over the term of the loan.

The Bank relies heavily on *Eubanks v. Simpson,* 90 S.W.2d 291 (Tex.Civ.App., Amarillo 1936, writ ref'd) for the proposition that if the interest does not exceed 10% over the life of the loan, it may exceed 10% in any given year. That reliance is misplaced. In *Eubanks* there was a fee deducted "up front" which had the effect of reducing the principal. The contract, however, provided that the payments be evenly spread over the life of the loan, never exceeding 10% during its life, or in any one year. The Court did not refer, even in dictum, to a transaction in which the interest would be greater than 10% in any one year of its term.

In their brief, plaintiffs argue for recovery of double the interest contracted for or charged, asserting that by their agreement, the principal was reduced, as in the *Eubanks* case, to $56,000.00. The total amount of principal and interest due at the end of three years was $77,000.00. At 10% per annum for three years, the maximum allowable interest on $56,000.00 is $16,800.00, which, when added to the principal, is $72,-800.00, or $4,200.00 less than the amount the Bank actually charged. The interest charged was, then, more than the 10% per annum allowed by law.

Plaintiffs next assert the trial court erred in concluding as a matter of law that the Bank did not have the prerequisite intent to charge usury and, therefore, was not liable to the plaintiffs. This point is sustained.

■ The law is well settled that intent, in usury cases, does not mean intent to charge a usurious rate of interest. Rather, it means intent to make the bargain made. *Moore v. Sabine National Bank of Port Arthur,* 527 S.W.2d 209 (Tex.Civ.App., Austin 1975, writ ref'd n. r. e.); *Townsend v. Adler,* 510 S.W.2d 175 (Tex.Civ.App., Houston (14th Dist.) 1974, no writ). Tibbets testified he did not intend to charge usury and that the device agreed upon was not conceived in order to exact more than the legal rate of interest. While those self-serving statements may well be true, they are immaterial. It is also immaterial that the idea for the form of the loan was conceived by the Millers or their agent. The Bank understood and agreed to the terms as written and even prepared the letter of agreement for O. W. Miller's signature.

■ Money lenders are presumed to recognize usury when they see it, and are on notice that it is illegal. In *Townsend v. Adler,* supra, plaintiff brought suit on a promissory note. Borrowers gave plaintiff their note for $4,000.00, due in one year

without interest. Borrowers received only $3,000.00. Borrowers pleaded usury as a defense. Judgment was rendered that plaintiff recover nothing. The lender was ignorant of the usury law when he made the loan. He nevertheless forfeited all recovery on the note because the effective annual rate of interest charged was 33⅓%, which is more than double the maximum rate allowed by law. In affirming the judgment that court stated: "Although it appears that Townsend was ignorant of the usury laws when he made the loan, it is clear that he intended to make the bargain which he made. While we appreciate the harsh result brought about by our statute, we are not at liberty to disregard its clear mandate."

The Bank urges the further defense of accidental and bona fide error. In support of its contention, the Bank relies upon *O. R. Mitchell Motors, Inc. v. Bell*, 528 S.W.2d 856 (Tex.Civ.App., San Antonio 1974, writ ref'd n. r. e.), a suit under the Consumer Credit Code. The contention there made is that the appellant had instructed its printer to print its contract in the size type required by law; but by inadvertence the printer used a smaller type, which was an accidental and bona fide error.

The Millers' loan instruments show on their face that the loan is usurious, as in *Townsend* supra. In such a case, the Bank has the burden to prove that the terms of the loan resulted from an accidental and bona fide error. Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(1) (1971); *Moore v. Sabine National Bank of Port Arthur*, supra; *Am. Century Mtg. Investors v. Regional Ctr.*, 529 S.W.2d 578 (Tex.Civ.App., Dallas 1975, writ ref'd n. r. e.).

In the instant case, the Bank has introduced no evidence to show that it did not mean to agree to the terms of the loan as written due to any accidental and bona fide error. The loan is usurious.

As indicted above, plaintiffs brought suit against the Bank for any relief to which they were entitled due to the usurious interest charged both Mr. and Mrs. Miller. The Bank filed a counterclaim against plaintiffs to recover $14,000.00 representing a portion of the interest it had charged the Millers in connection with the $70,000.00 loan. Under oath, plaintiffs pled usury as a defense to the counterclaim for $14,000.00. A usurious contract is unenforceable as to the interest contracted for, charged or received. The statute is available to the borrower as an offset in an action on a note and as a defense. *Wall v. East Texas Credit Union*, supra; *Townsend v. Adler*, supra. This had the legal effect, then, of denying the Bank a recovery of the $14,000.00 and there should have been a take-nothing judgment on the Bank's counterclaim.

The Bank in its counterclaim alleged in part as follows:

*"Counterclaim for Interest*

". . .

"2. *Macile Miller* paid into the Registry of the Court $7,000.00, *representing interest* for one year due about January 6, 1975.

". . .

"5. Defendant has forgiven and released any claim for *interest* against *Plaintiff, other than $14,000.00* for 1973 and 1974 interest on the $70,000.00 loan.

"6. Defendant prays for judgment in the amount of $14,000.00 against Plaintiff for *unpaid interest*, and for an order authorizing an offset of the proceeds in the bank and an order paying bank the proceeds in the Court." (Emphasis ours.)

The Bank, in its counterclaim, admitted that this $14,000.00 was interest it had charged the Millers. It follows then as a matter of law under the undisputed facts, the judgment in favor of the Bank against plaintiffs was erroneous and the Bank's counterclaim should be denied.

The Bank assigns a counterpoint that Mrs. Miller's claim in her representative capacity cannot be reviewed because she did not brief the point. The trial court concluded, as a matter of law, that O. W. Miller's claim for usury terminated upon his death. However, Mrs. Miller assigns a reply coun-

terpoint that her claim, in her *individual* capacity is not extinguished by reason of the death of her husband, because she also contracted for the loan and was charged usurious interest in her individual capacity as a joint obligor.

The Bank relies on the authority of *Ellis v. Brooks*, 101 Tex. 591, 102 S.W. 94 (Tex.1907), a case in which a father sued on a liquor dealer's bond, for the death of his minor son, which death resulted from a sale of liquor by defendant to the minor son. The suit by the father, who died before judgment, was properly abated. The supreme court held that while the father's action terminated on his death, the boy's mother, also an aggrieved party, could prosecute an action in her own right. *Ellis* is directly in point here, where both O. W. and Macile Miller, as joint and several obligors, had an individual right to sue the Bank for usury. His death abated his action, but had no effect on hers in her individual capacity.

In *Pinemont Bank v. DuCroz*, 528 S.W.2d 877 (Tex.Civ.App., Houston (14th Dist.) 1975, writ ref'd n. r. e.), there were seven signers of a note. Of those, two were corporations, to which the same usury law does not apply. Of the five remaining, only three brought suit. The usurious interest contracted for was $50,733.04. The trial court awarded *each* of the plaintiffs double the interest contracted for or charged: $101,466.08, or a total award of $304,398.24. The appellate court, in reversing, held the statute allows a penalty of only twice the total interest contracted for in each obligation. It stated, "The maximum forfeiture which could be awarded is twice any interest contracted for that may be usurious." The case was remanded for a determination of the capacities in which the three plaintiffs signed the note.

The application of *Pinemont* to the present case lies in the court's implicit holding that the total amount of usurious interest, doubled, will be awarded to the successful plaintiffs—whether one or several.

Had O. W. Miller survived, he and Macile Miller would jointly have recovered whatever penalty is assessed. Under the statute, anyone who contracts for, charges or receives usurious interest, ". . . shall forfeit to the *obligor* twice the amount of interest contracted for, charged or received . . . ." Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(1) (1971). (Emphasis ours.) Macile Miller was an obligor in her individual capacity; i. e., she contracted to pay, and was liable for, the entire amount of the loan, and therefore falls within the protection of the statute. *McDonald v. Cabiness*, 100 Tex. 615, 102 S.W. 721 (Tex.1907); *Hall v. McGregor*, 431 S.W.2d 369 (Tex.Civ.App., Houston (1st Dist.) 1968, no writ).

The Bank has cited no authority in point for its contention that Macile Miller's claim is extinguished, or that one-half of the entire claim is extinguished, by reason of the death of one of the joint and several obligors. Macile Miller has caused the principal on the note to be paid, as she was obliged to do, and retains the right in her individual capacity to collect any penalties awarded by reason of usurious interest having been charged her for obtaining the loan.

The Bank urges that even if the loan should be found to be usurious, recovery is limited to twice the amount of interest actually paid, rather than twice the amount contracted for or charged. It cites only one case for that proposition: *W. E. Grace Manufacturing Company v. Levin*, 506 S.W.2d 580 (Tex.1974). A careful reading of *Grace* reveals that the time period for repayment was left uncertain. Therefore, it was impossible for the court to compute the amount of interest charged. In order to avoid speculation, it considered only the amount paid, and the time period in which it was paid. In the instant case, the terms were certain.

The statute in this respect is clear. Tex. Rev.Civ.Stat.Ann. art. 5069—1.06(1) (1971) provides: "Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest *contracted for, charged or* received, and reasonable attorney fees

fixed by the court . . . ." (Emphasis ours.)

■ The Bank in its motion for rehearing contends that since Mrs. Miller did not sign the freeze letter, i. e., she did not agree to the interest that the Bank actually charged both Mr. and Mrs. Miller, she cannot recover. This contention is overruled.

Since our original opinion the supreme court has again followed the law of the *Wall* case, supra, in *Windhorst v. Adcock Pipe & Supply*, 542 S.W.2d 222 (Tex.Civ. App., Waco 1976), *rev'd* 547 S.W.2d 260, 20 Tex.Sup.Ct.J. 173 (Tex.1977). In that case the customer had not paid any finance charge, but was claiming that the charging alone, since it was excessive interest, constituted usury. The supreme court stated that the court of civil appeals held that " 'the "charging" (emphasis theirs) of interest in excess of the amount authorized is not actionable *unless charged pursuant to an agreement* (emphasis ours) of the parties, or actually collected.' " The supreme court, in reversing the court of civil appeals then held "Such a holding is contrary to the plain meaning of Article 5069—1.06. By describing the conditions precedent to recovery of penalties in the disjunctive, the Legislature made it clear that only one such condition need to occur to trigger penalties; either a contract for, *a charge* (emphasis ours) of *or* (emphasis theirs) receipt of usurious interest." It is undisputed that the Bank *charged* both Mr. and Mrs. Miller the interest here described. Under the decision of *Windhorst*, supra, that charge triggered penalties.

Plaintiffs assert the trial court erred in holding that they were estopped from seeking penalties under the usury statute because their attorneys and agents conceived the loan plan on which the Bank relied. We sustain this point and hold the evidence establishes conclusively to the contrary.

■ As between the original parties to a transaction, estoppel is not ordinarily applicable in usury cases. *Western Guaranty Loan Co. v. Dean*, 309 S.W.2d 857, 863 (Tex.Civ.App., Dallas 1957, writ ref'd n. r.

e.). *Associates Inv. Co. v. Thomas*, 210 S.W.2d 413 (Tex.Civ.App., Fort Worth 1948, no writ). However, even if estoppel were applicable to a suit asserting usury, there is no evidence in the record supporting such a finding or conclusion of law.

■ The general basis of equitable estoppel is deceptive conduct and there simply was none in this case. In *Ellis v. Cleavinger*, 298 S.W.2d 193 (Tex.Civ.App., Amarillo 1957, no writ), that court held that equitable estoppel consists of five elements: (1) a false representation or concealment of a material fact, (2) the representation must be made with knowledge of the facts, (3) the person to whom it is made must have been ignorant of the truth concerning the matter, (4) it must have been made with the intention that the innocent party should act upon it, (5) he must have been induced by the false representation to act upon it.

The Bank in its motion for rehearing contends no appeal was perfected on behalf of Macile Miller, as independent executrix of the estate of O. W. Miller. This contention is overruled. The transcript reflects that "MACILE MILLER, individually and as Executrix of the estate of O. W. Miller . . . ." timely gave notice of appeal ". . . from said Judgment and all portions of it . . . ." The appeal bond was signed by Macile Miller individually and as executrix of the estate of O. W. Miller.

In its motion for rehearing the Bank contends that the findings of the trial court were not properly challenged by plaintiffs. This contention is overruled. Their challenge took the form recommended by Chief Justice Robert W. Calvert, in an article entitled " 'No Evidence' and 'Insufficient Evidence' Points of Error", 38 Texas L.Rev. 361, 363. Judge Calvert states that where the evidence establishes conclusively the opposite of the vital fact, it is not a true "no evidence" situation. "It usually arises when a jury finds the nonexistence of a vital fact or gives a negative answer to an issue inquiring as to the existence of a vital fact, whether the fact be vital to a plaintiff's claim or to an affirmative defense.

Points of error in that situation which assert that there is no evidence of probative force to support the jury's finding really miss the target. For example, what does it benefit a party that there is no evidence to support a jury finding that the opposite party *did not* commit a negligent act? Before a party is entitled to have a judgment based on the answer reversed and judgment rendered in his favor it must appear that the evidence establishes conclusively that the act *was* committed. In this situation it would be much better to forget the words 'no evidence' and assert in the point of error . . . that the evidence establishes conclusively, or as a matter of law, that the act was committed."

■ In the case before us Mrs. Miller was not permitted to testify because of the effect of Tex.Rev.Civ.Stat.Ann. art. 3716 (1926), (the "Dead Man's Statute".) As a result, all material testimony was elicited from Blease Tibbets, president and member of the board of directors of the Bank. His testimony is clear and consists of admission of positive and definite facts. He admitted that Mr. Winters was acting as agent for both Mr. and Mrs. Miller. He admitted all of the facts stated in this opinion. All the facts necessary to find usury and to defeat the Bank's counterclaim are established conclusively and constitute judicial admissions on the part of the Bank which preclude the trial court from finding any facts contrary. *Griffin v. Superior Insurance Company,* 161 Tex. 195, 338 S.W.2d 415 (1960).

■ The errors of the trial court are properly preserved by the plaintiffs by their points of error, statement and argument in which they show that the evidence establishes conclusively or as a matter of law that usurious interest was charged and therefore they are entitled to the relief here granted them by this court.

■ The Bank had the burden of proving that it was entitled to recover the two $7,000.00 items since it could have maintained such a cause of action in an independent suit. See 52 Tex.Jur.2d, Set Off,

Counterclaim, and Cross Actions, Determining nature of plea—§ 55, at 259 (1964).

As stated above, the Bank filed a counterclaim against plaintiffs to recover the $7,000.00 frozen in their joint checking account and the $7,000.00 they had deposited in the registry of the court which the Bank admitted is interest. Since it is conclusively established these are items of usurious interest charged, the Bank cannot enforce its contract to recover them. Therefore, as a matter of law the trial court should have rendered a take nothing judgment against the Bank with appropriate orders for the Bank and clerk of the trial court to pay said sums to the counter defendants.

■ The Bank contends Mrs. Miller is not entitled to recover the two $7,000.00 items because she did not specifically pray for such recovery. We overrule this contention. All parties fully pled the facts and each had a general prayer seeking general relief.

■ The facts established in the cause were properly pled and are supported by the evidence. The measure of damages, then, is a matter of law, and it becomes the duty of the court to apply the proper measure of damages. 17 Tex.Jur.2d, Damages—Measure of damages, § 197, at 263 (1960).

■ As an additional reason why plaintiffs should be awarded the $7,000.00 now in the registry of the court, we note it was deposited pursuant to a written agreement by Ryan Mortage Company, the Bank, and Mrs. Miller; which agreement provided that the sum would be deposited without prejudice to any of the parties to this suit. Because of the agreement this sum was never paid to the Bank. Since the Bank has no enforceable right to the money so deposited, it should be returned to the depositors. *Wheeler v. Pavlic,* 290 S.W.2d 754 (Tex.Civ.App., Beaumont 1956, no writ); *Gamer Paper Co. v. Tuscany,* 264 S.W. 132 (Tex.Civ.App., San Antonio 1924, writ dism'd).

■ On motion for rehearing, counsel for the Bank correctly pointed out the logi-

cal inconsistency in our earlier opinion, now withdrawn as to the measure of damages. Since plaintiffs have already paid $70,000.00 on a principal of $56,000.00, they have paid $14,000.00 in interest. To effectuate the intent of the usury statute, the interest payment should be returned to Mrs. Miller before she recovers twice the interest charged, so that the net effect is a forfeiture of twice the interest charged. It would violate the unquestioned legislative purpose of the statute to penalize the plaintiff in the amount of any usurious interest paid before suit is filed. *Wall v. East Texas Teachers Credit Union*, supra. In order to avoid the anomalous result brought to our attention by counsel for the Bank, we hold Mrs. Miller, as plaintiff, should recover the $14,000.00 interest already paid, plus $42,000.00, which is twice the interest charged. This is in addition to the two $7,000.00 items the Bank failed to recover in its counterclaim.

It is the duty of this court to render such judgment as the court below should have rendered. Tex.R.Civ.P. 434.

## CONCLUSIONS

(1) The Bank in its capacity as counter plaintiff in its suit against the plaintiffs for $14,000.00 which it claims is interest due, is unenforceable because the charge was usurious. Therefore, the Bank should take nothing by this counterclaim.

(2) The *two* $7,000.00 amounts should be awarded to plaintiffs.

(3) In the suit in which the estate of O. W. Miller is suing for double the usurious interest charged, there should be a take nothing judgment because his cause of action did not survive his death. This portion of the judgment is affirmed.

(4) Macile Miller in her individual capacity as plaintiff should prevail in her suit for double the usurious interest charged or contracted for in the amount of $42,000.00.

(5) Macile Miller should recover $14,000.00, which is the difference between the $70,000.00 paid and the $56,000.00 principal received.

(6) Judgment for the sums awarded in paragraphs 4 and 5 above shall bear interest at the statutory rate from January 19, 1976, the date of the trial court's erroneous judgment, until paid. *American Paper Stock Company v. Howard*, 528 S.W.2d 576 (Tex.1975).

We accordingly reverse the judgment of the trial court and render judgment in accordance with the above conclusions, which judgment has this day been entered in the minutes of this court.