**Addie B. GOLD, Appellant,**

v.

**ALAMO LUMBER COMPANY, Appellee.**

**No. 8642.**

Court of Appeals of Texas, Beaumont.

Oct. 1, 1981.

Rehearing Denied Oct. 29, 1981.

Dennis K. Drake, San Antonio, for appellant.

Emerson Baneck, Jr., San Antonio, for appellee.

KEITH, Justice.

Plaintiff below appeals from an adverse judgment, based upon a jury verdict, in her suit to recover statutory penalties for usury pursuant to *Tex.Rev.Civ.Stat.Ann. art. 5069–1.06 (1971)*. She alleged that defendant charged her $27,124.70 more interest than was authorized by law. Her theory of recovery was that defendant required her to assume her son's debt as an express condition of the defendant acquiring and extending the time of payment of her note then held by a bank.

The facts, while somewhat involved, essentially are undisputed. Plaintiff is a widow living in San Antonio on a modest fixed income. Her son, Stetson G. ("Bubba") Reed, was engaged in business in Pleasanton, Texas. At Bubba's request, plaintiff executed a note for $75,000 bearing 9.5 percent per annum interest to the First National Bank of Pleasanton and secured it by a lien on real property located in Bexar County. All of the proceeds of this note ("Note One") went to Bubba. After Bubba had secured one extension of time for payment of Note One, plaintiff again defaulted and the Bank posted notices of foreclosure of the deed of trust securing such note.

At that time, Bubba was indebted to the defendant for building materials he had purchased for use on some of his projects in Pleasanton. He arranged for defendant to purchase the delinquent Note One from the Bank for the face amount and interest due thereon. It is undisputed, as testified by defendant's Vice-President Collins, that defendant agreed to purchase such note only on condition that plaintiff execute and deliver "Note Two" to defendant. This second note was in the principal sum of

$30,893.10,[1] bore interest at 9.5 percent, and was secured by a second lien on the same land securing Note One.

Plaintiff made no payments on either note; instead, she sued defendant to recover the statutory penalties for usury. Defendant answered by various pleas and filed a counterclaim seeking judgment upon Note One and foreclosure of its lien on the property. It sought no recovery on Note Two although it had earlier made a demand for payment.

It is undisputed that in each instance the form of the loan documents and the figures contained therein are regular in form and show no charge or contract for illegal interest. However, the jury found that defendant required plaintiff to assume or pay Bubba's debt to defendant as a condition to its acquisition of Note One.[2]

Defendant contended below that the entire transaction was originated by Bubba Reed who saw to the execution of the several instruments leading to its conclusion. Defendant's Vice-President Collins testified upon several occasions that he was aware of the maximum legal rate of interest of ten percent and that he had not intended to charge interest in excess thereof. Collins also testified that had he known that the transaction was usurious, his company would never have consummated the deal with plaintiff.

The jury did not find that defendant intended to charge or contract for usurious interest.[3] The jury found that Bubba was an agent for his mother in arranging the transaction with defendant who justifiably relied upon him in acquiring Note One and accepting Note Two. The trial court overruled plaintiff's *Rule 301* motion to disregard the findings in answer to Issues 2, 3, and 6 and to enter judgment for the penalties provided in the statute. We now reverse the judgment of the trial court and render judgment in accordance with the verdict for the reasons now to be stated.[4]

The Legislature defined interest in *Art. 5069–1.01(a) (1971)* as "compensation allowed by law for the use or forbearance or detention of money." In *Laid Rite, Inc. v. Texas Industries, Inc.,* 512 S.W.2d 384, 389 (Tex.Civ.App.—Fort Worth 1974, no writ), the Court, relying upon a series of out-of-state decisions, wrote:

> "There are many cases that hold that where a lender, as a condition of a loan and as a consideration for making it, requires the borrower to assume or pay in whole or in part, the debt that another owes to this same lender; that the amount of the assumed or paid-off debt will be considered as interest in determining whether or not the loan is usurious."

*Laid Rite* was followed in *Stephens v. First Bank & Trust of Richardson,* 540 S.W.2d 572, 574 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.).

If *Laid Rite* correctly expresses the law of Texas, it is controlling in the case at bar. Defendant's able counsel marshals several ingenious answers which would render *Laid Rite* inapplicable to our fact structure. First, it is urged that an antecedent indebtedness is not affected by a subsequent usurious renewal. Several decisions are cited in support thereof. See, e. g., *Cain v. Bonner,* 108 Tex. 399, 194 S.W. 1098 (1917);

---

1. Bubba owed defendant $23,552.40 on an open account and defendant paid the Bank's lawyers $7,340.70 for their services in connection with the foreclosure of Note One.

2. Issue No. 1: "Do you find from a preponderance of the evidence that as a condition for purchasing the $75,000.00 note from the Pleasanton National Bank and extending time for payment, Alamo Lumber Company required Addie B. Gold to assume or pay the debt of Stetson ("Bubba") G. Reed to Alamo Lumber Company?" Answer: "It was a condition."

3. The lengthy instruction following the second special issue advised the jury, inter alia, that "usury is a matter of intention" and that "the transaction is not usurious unless the lender also supposed and intended it to be so."

4. We are required to impose severe financial penalties upon the defendant because of prior binding precedents, both statutory and decisional, even though in imposing such penalties we unjustly enrich other participants in the same proceeding who formulated and nurtured the transaction. As an intermediate court, we have no alternative.

*Manning v. Christian*, 124 Tex. 517, 81 S.W.2d 54, 56 (1935).[5]

We do not find this line of authority viable because of the change in the statutes governing usurious interest. At the time *Manning* was decided, written contracts providing for a rate of interest greater than ten percent per annum were "void and of no effect for the amount or value of the interest only; but the principal sum of money or value of the contract may be received and recovered." *Art. 5071, Tex. Rev.Civ.Stat. (1925).*

Similarly, an action to recover usurious interest could be maintained only to recover such usurious interest which had "been received or collected." *Art. 5073, Tex.Rev. Civ.Stat. (1925).*

■ The statute under which this case proceeds is different and much broader. *First*: The reach of the statute is such that it includes "[a]ny person who contracts for, charges or receives interest which is greater than the amount authorized. . . ." *Art. 5069–1.06(1). Second*: Any such person who contracts for, charges or receives such usurious interest "shall forfeit as an additional penalty, all principal as well as interest and all other charges" upon such indebtedness. *Id., (2).* And, it is clear that the occurrence of any one of the three conditions of *Section (1)*, supra, "triggers the penalty provisions of the statute." *Tanner Development Co. v. Ferguson*, 561 S.W.2d 777, 788 (Tex. 1977).

Defendant's reliance upon *Manning v. Christian*, supra, is misplaced and constitutes no defense.

■ Next, defendant asserts that it has always been the law in Texas "that the Plaintiff must show an intent on the part of the lender to charge a usurious rate of interest in order to recover usury penalties." It cites and relies upon language found in *Abilene Christian College v. Wright*, 1 S.W.2d 720, 723 (Tex.Civ.App.—El Paso 1927, writ ref'd), such being a copious quotation from *Bank v. Waggener*, 9 Pet. 378, 399, 34 U.S. 378, 399, 9 L.Ed. 163, 171 (1835).

Pointing to Vice-President Collins' testimony as to his intent in making the loan, defendant also relies upon language found in *American Century Mortgage Investors v. Regional Center, Ltd.*, 529 S.W.2d 578, 583 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r. e.).[6] While the jury accepted Collins' disclaimer of any intent to charge usurious interest, we do not find that defendant either pleaded or established a defense to the claim of usury.

We decline to adopt the intent theory urged upon us by the defendant. In *Cochran v. American Savings and Loan Association*, 586 S.W.2d 849, 850 (Tex.1979), the Court, holding that jury findings as to intent were immaterial, held:

"Intent in usury cases does not mean intent to charge a usurious rate of interest. Rather, it means intent to make the bargain made. [citations omitted] The subjective intent of the lender is irrelevant . . . ."

Defendant attempts to distinguish *Cochran* from the case at bar by pointing to the fact that the defendant there admitted that it had overcharged the plaintiff by at least $183.33 which it never offered to refund to plaintiff. (568 S.W.2d 672, at 676) It argues that the loan papers in our case did not reflect any usurious interest and no interest—legal or usurious—was ever collected or received by our defendant. Other

---

5. Judge German, speaking for the court in *Manning v. Christian*, supra, referring to *Cain v. Bonner*, supra, wrote:

"[A]ntecedent indebtedness is not affected by a subsequent usurious renewal, when the original indebtedness may be sued upon as an independent cause of action and the usurious transaction be abandoned."

6. In *American Century Mortgage*, supra, the Court said: "Usury is a matter of intention. Unless the loan papers show on their face an intention to charge interest at a greater rate than permitted by law, the burden is on the party pleading usury to show the existence of some agreement, device, or subterfuge to charge usury and that both parties had that purpose in contemplation." (529 S.W.2d at 583)

cases of similar import are listed in the margin.[7] We remain unpersuaded.

We note, in passing, that defendant did not plead, nor did it offer proof that the contract for, charge or receipt of money was a result of accidental and bona fide error, the only effective defense available under *Art. 5069–1.06. Cochran*, supra.

■ The defendant also points to the jury finding that Bubba was the agent of his mother in arranging the transfer of Note One and that defendant justifiably relied upon his acts in purchasing Note One from the Bank. Upon the basis of these findings, it argues that plaintiff is estopped to avoid payment of the principal of Note One. Several out of state cases are cited for the proposition that the usury statutes were designed to protect borrowers from unscrupulous lenders and not to provide vehicles for unjust windfalls. Other cases apply the agency doctrine to defeat a recovery by the borrower.

Whatever may be said for the merit of such an argument, we do not write upon a clean slate. In *First State Bank of Bedford v. Miller*, 563 S.W.2d 572, 575 (Tex.1978), there was evidence that the concept whereby usury was charged originated with the borrower, but the Court held:

> "[T]he test for alleged usury is not concerned with which party might have originated the usurious provisions."

■ We have examined carefully all of defendant's counterpoints seeking to uphold the judgment of the trial court and find that no defense to the charge of usury was presented in the trial court and that the trial court erred in denying the plaintiff the recovery which she sought.[8]

Under the record which we have reviewed, plaintiff was entitled to judgment against the defendant for the statutory penalties and interest as sought by the plaintiff in the form of judgment attached to her motion for judgment notwithstanding the answers to special issues which was filed in the trial court on March 7, 1980, and now appears at pages 75–79 of our transcript.

We reverse the judgment of the trial court and remand the cause with instructions to the trial court to enter judgment for the plaintiff and against the defendant in the precise language of the judgment tendered by the plaintiff, as aforesaid. Interest on said judgment shall be at the rate of nine percent per annum from and after March 7, 1980, the date of the judgment which we have set aside. All costs in all courts are adjudged against the defendant.

REVERSED and REMANDED with instructions.

---

7. See, e. g., *Miller v. First State Bank*, 551 S.W.2d 89, 98 (Tex.Civ.App.—Fort Worth 1977), aff'd as modified, 563 S.W.2d 572 (Tex. 1978); *Moore v. Sabine National Bank*, 527 S.W.2d 209, 213 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.).

8. Defendant has two crosspoints complaining of the action of the trial court in refusing to submit a special issue and an instruction relating to estoppel because of Bubba's acts. We have found no merit in the estoppel defense and the crosspoints are each overruled without further comment.